[ Filed July 1, 1890.]

## E. K. ANDERSON, Appellant, v. W. P. HAMMON and E. W. HAMMON, Respondents.

LEASE—EQUITABLE JURISDICTION—CANCELLATION.—Where the neglect and omissions of the defendants to perform their obligations under a lease resulted in waste, which, if permitted to continue, must eventually result in the ruin and destruction of its subject matter to the irreparable damage of the plaintiff; *held*, that equity would interfere and cancel the lease to prevent such waste and destruction.

APPEAL from Jackson county: L. R. WEBSTER, judge.

This was a suit in equity brought by the plaintiff and appellant to have a lease cancelled, and for damages, and for a temporary injunction pending the suit. A large amount of evidence was taken; and, after a full hearing, the court found that the evidence failed to sustain the complaint and dismissed the suit. From the decree rendered herein this appeal is taken.

*H. K. Hanna* and *Francis Fitch*, for Appellant.

*C. W. Kahler*, for Respondents.

LORD, J., delivered the opinion of the court.

The plaintiff in his complaint alleges, that at the execution of the lease sought to be cancelled he was the owner of a valuable apple orchard, consisting of thirty acres, and also twenty acres or more set with peach, plum and apricot trees; that each was in a good and healthy condition when taken possession of by the defendants; that, induced by the representations of the defendants, they would cultivate, prune and care for said orchard if a lease could be obtained for the same, the plaintiff entered into a written lease with the defendants to have said orchards for the period of five years, in which they agreed to properly cultivate and prune the same according to the rules of good horticulture, plowing at least one way each year, etc., but that by reason of the neglect and failure of the defendants to properly cultivate said orchards, they were overrun with suckers, water-sprouts and orchard pests, so that the trees were and are going rapidly into decay and ruin, to the irreparable injury of the plaintiff.

The answer admits the lease, etc., but denies specifically the neglect or failure to comply with the terms of the lease and all else material. The contention of the defendants is, that, under the lease, they were not required to do any particular amount of cultivation or pruning; that they only agreed to "prune and cultivate the orchards according to the rules of good horticulture," and that the only

indication of the amount of cultivation is limited to "plowing at least one way each year," and consequently were not bound to grub out the trees, to cut out borers, to take proper measures to destroy the woolly aphis, or other insect life detrimental to the healthful condition of the trees.

The evidence shows that the plaintiff and the defendant W. P. Hammon, previous to the execution of the lease, had several conversations in respect to the cultivation and preservation of fruit and the production of fruit thereon, and that the defendant professed, and so represented himself, to be versed by study and experience in horticulture; and that the plaintiff, impressed with the value of such knowledge and experience in fruit raising, and the ability of the plaintiff to handle and care for his orchards so as to make them more profitable, and to improve and keep such orchards in good condition, and the trees in the best state of productiveness, was induced by the defendant to make the lease for the period named, which he represented to be necessary to effect such objects, keep the trees renovated and in good fruit-bearing condition, and reap the advantages suggested. It also shows that the defendant took the plaintiff into his orchard and explained to him wherein he failed, how the insect pests which often injured and destroyed the trees could be removed and exterminated, and how, according to good horticultural methods, the health of the trees could be maintained and their fruit-bearing qualities preserved; that after several conversations of this character, the defendant himself drew up the lease and it was signed in view of these facts and under such circumstances. The evidence shows that suckers growing around the roots of fruit trees exhaust the nourishment that should go to the support of the trees; that water-sprouts growing after heavy pruning produce a similar effect; that the aphis infesting an orchard, when left to itself, eventually injures or kills the trees, and that the borer in a peach and apricot orchard, if not removed with a knife, produces a similar effect upon those trees.

It is clear, then, to properly care for and cultivate an orchard, that it is necessary that one should look carefully after these matters to prevent the decay or destruction of the trees and to preserve them in a healthy, fruit-bearing condition, for it is conceded, unless suckers are removed, and these pests are checked or exterminated, the orchard will finally go into decay and be irreparably injured.

Whose duty, then, was it, under this lease, to attend to these matters? It would seem to me that the language of the lease necessarily included attention to these matters without their express mention. To prune and cultivate an orchard according to the best horticultural methods, would require the doing of all those things which are essential to keep the trees in a good condition and preserve their fruit-bearing qualities, which would include the cutting off of suckers and water-sprouts when necessary to the health of the trees, as well as the taking of proper steps to remove insects pests, which sapped their lives, when the trees are so infested. But if there was any doubt as to the proper construction to be given to the lease, when what preceded and induced the making of the lease is considered, such doubt must be removed and the duty of the defendants in the premises made plain; they must have understood their obligation to include the removal and destruction of all such insect pests as were detrimental to the health of the trees. The lease was obtained and the possession of the orchard upon the reliance placed in the representations of the defendant W. P. Hammon; and under the circumstances the defendant must have known how the plaintiff understood it, and also that the defendant W. P. Hammon would give his personal attention to the cultivation of the orchards, according to the rules of good horticulture as understood and explained by him. That he did not do so, but left the matter in other hands and went to California, is not disputed. That by reason of the neglect and failure of the defendants to comply with their agreement and properly cultivate and care for the orchards, we think the evidence shows that suckers and

water-sprouts were allowed to grow and overrun the apple orchard, and that both orchards were infested with insect pests, which seriously injured the healthful condition of the trees, killing some and causing others to go into decay, and which, if permitted to continue without any effort at abatement during the period of the lease, must result in the ruin and destruction of these orchards and irreparable injury to the plaintiff.

Under such circumstances it seems to us a court of equity ought to interfere and prevent the decay and eventual ruin and destruction of these orchards by cancelling the lease and arresting the progress of its waste from the failures and omissions of the defendants.

We think, therefore, the court erred in dismissing the suit, and that the cause must be remanded to take the account prayed for with directions to cancel the lease and make the injunction perpetual, and it is so ordered.