WALDO *v.* JACOBS.

1. EJECTMENT—ACTION—EVIDENCE—FOUNDATION OF DEFENDANT'S CLAIM.

   In an action of ejectment against one in possession of land under arrangement with plaintiff's ancestor, evidence examined, and *held*, to show that defendant based his claim and his right to hold the land depended solely upon a lease executed by plaintiff's ancestor.

2. LANDLORD AND TENANT — TERMINATION OF RELATION — NOTICE TO QUIT—NECESSITY.

   A tenant holding possession after the death of his landlord, and claiming under a lease executed by decedent which is void as a matter of law, is not entitled to notice to quit as a tenant by sufferance.

3. SAME—LEASE — AGRICULTURAL LANDS — VALIDITY — CONSTITUTIONAL LAW.

   A lease of agricultural lands for a period of 20 years from the date of its execution, placed in escrow to be delivered upon the death of the lessor, takes effect upon delivery in accordance with the terms of the deposit, and where such delivery occurs more than 12 years prior to the date of expiration of the lease, it is void under section 12, article 18, of the Constitution.

Error to Ingham; Wiest, J.   Submitted February 18, 1908.   (Docket No. 92.)   Decided May 1, 1908.

Ejectment by Miranda Waldo against Mark S. Jacobs. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error.   Affirmed.

*William T. Webb* and *O. J. Hood*, for appellant.

*W. F. Cairns* (*Rollin H. Person*, of counsel), for appellee.

BLAIR, J.   This is an action of ejectment prosecuted by Miranda Waldo, widow of Scott Waldo, to recover possession of a farm which descended to her upon the death

of her husband, intestate, October 3, 1906. On the 18th day of January, 1900, the defendant, Jacobs, was occupying the farm substantially as manager under an arrangement made in 1897, whereby he was to put in his time against Mr. Waldo's farm, they to stock it together and each take half.

On the last-mentioned day, Jacobs and Waldo executed a written lease, whereby Waldo leased the farm to Jacobs,—

"To have and to hold the said demised premises with the appurtenances unto the said party of the second part, his executors, administrators and assigns, for and during the full end and term of twenty years from and after the 18th day of January, 1900; fully to be complete and ended, the said party of the second part yielding and paying during the continuance of this lease, unto the said party of the first part, his heirs and assigns, for rent of said premises for said term of twenty years the sum of five dollars, payable as follows: Five ($5.00) dollars on or before the first day of January for each and every year during the continuance of this lease.

"And the said party of the second part for his executors, administrators and assigns does hereby hire the said premises for said term of twenty years as above mentioned and covenants well and truly to pay or cause to be paid unto said party of the first part, his representatives, heirs and assigns, at the days and times above mentioned, the rent above reserved," etc.

The lease purports to have been "signed, sealed and delivered in presence of E. N. Crossman, Jas. A. Dana," by both parties. The lease was recorded in the office of the register of deeds October 9, 1906.

About the time of its execution, the lease was delivered to the witness Crossman, a banker, enclosed in a sealed envelope upon which was indorsed in Mr. Waldo's handwriting the following:

"MARK S. JACOBS,
    "Williamston, Mich.
    "This package to be delivered to Mark S. Jacobs only in case of my death.
                                    "SCOTT WALDO."

Mr. Crossman testified that there were no verbal instructions, "only that it was to be delivered according to instructions on the paper. I think his words were that that was to be delivered to Mr. Jacobs on his death."

Mr. Dana, the other witness to the lease, testified:

"That is my signature. I remember of signing the paper. I signed it in Crossman & Williams' bank. Ned Crossman signed as the other witness. Mr. Waldo and Mr. Jacobs were there at the time, I don't remember Mr. Waldo giving Mr. Crossman any instructions about the delivery of the paper. Mr. Waldo told Mr. Jacobs that he was going to leave it with Mr. Crossman. He said he would leave it at the bank. I don't know whether he did or not. Mr. Jacobs and Mr. Waldo signed it at the bank. We all four signed it there in the bank."

The package was delivered to Jacobs soon after Waldo's death and constitutes his main ground of defense in this suit.

On the 26th of November, 1906, a full settlement was had between the administrator of Mr. Waldo's estate and Mr. Jacobs. On the 29th of December, Jacobs came to Mr. Cairns, Mrs. Waldo's attorney, and offered him $5.

"He said he wanted to pay his rent due the first of January on the farm, that he was holding the Waldo farm under that lease."

Mr. Cairns received the money with the understanding that it should be returned if Mrs. Waldo or the administrator would not accept it. On January 11th, Mr. Cairns returned the money to Jacobs. On the same day he demanded possession of the farm for Mrs. Waldo, which Jacobs refused to surrender, and the present suit was commenced.

The circuit judge directed a verdict in favor of plaintiff, on the ground that defendant's rights depended entirely upon the lease, which was void under article 18, § 12, of the Constitution, providing:

"No lease or grant hereafter of agricultural land for a longer period than twelve years, reserving any rent or service of any kind, shall be valid."

The questions involved under the assignments of error in this case, as stated and argued by counsel for defendant in their brief, are as follows:

"1. If Mr. Waldo executed this lease January 18, 1900, and delivered it in escrow with instructions to deliver it to Mr. Jacobs upon Mr. Waldo's death, so that the term of said lease was for an indefinite period, was the lease invalid?

"2. If said lease was not invalid because it purported to convey a future contingent estate of indefinite duration, did it become invalid at the time of Mr. Waldo's death because more than twelve years intervened between the time of his death and the time fixed in the lease for its expiration?

"3. The term of said lease being an indefinite one, commencing, if at all, in the future, subject to the contingency of Scott Waldo's death within twenty years from January 18, 1900, was it a lease for a longer period than twelve years and therefore void within the prohibition of the Constitution, and did the court err in directing a verdict for that reason in favor of the plaintiff?

"4. Was defendant entitled to show by his wife the real consideration which led to the giving of the lease, the express consideration being a nominal one of five dollars per annum and the taxes during the term thereof, and further, that it was contemplated that he should have a continuous possession?

"5. Did the court err in instructing the jury that defendant was no more than a tenant in common with Mr. Waldo in the stock and farm produce raised, and that when he adjusted the matter of his interest in the stock and property owned in common by him and Mr. Waldo, with the administrator of Mr. Waldo's estate, he closed the business and should have moved from the farm?"

We are satisfied that the court correctly held that defendant's right to hold the farm depended entirely upon the lease. Defendant obtained the lease immediately upon the death of Mr. Waldo and put it upon record; he tendered the rent reserved by it and told Mr. Cairns, "that he was holding the Waldo farm under that lease." The receipt for the rent given by Mr. Cairns stated that it was tendered under the lease, and such statement was

adopted as correct when the money was returned to Mr. Jacobs by him in his receipt. The evidence in the record is clear that no tenancy was created by the original agreement; that a full settlement was had of the rights of the parties thereunder, and that after Mr. Waldo's death defendant Jacobs claimed, and so notified Mrs. Waldo, to rely solely upon the written lease. Under such circumstances, the defendant was not entitled to any notice to quit. *Kunzie* v. *Wixom*, 39 Mich. 384.

The circuit judge did not err in rejecting a conversation between the parties to the lease antedating its execution. There was no offer to show that the consideration was different from that stated in the lease. The offer was as follows:

"What I want to show by it is this: They had in mind that he was in possession, and according to the understanding and talk, that was to be a continuous possession for a long time afterwards, that it contemplated a continuous possession by Mr. Jacobs; that Mr. Waldo contemplated, whether the writing is effectual to show or not to make it out, it would bear on the understanding of the parties in regard to the possession, the length of possession that Mr. Jacobs was to have the place."

The important question for consideration is, whether the lease was in conflict with the constitutional provision quoted. If it was, it was absolutely void. *Clark* v. *Barnes*, 76 N. Y. 304.

Counsel for appellant admit that the lease by its terms is clearly in contravention of the Constitution, but they argue that the indorsement upon the envelope is to be considered in connection with and as a part of the lease; that, so interpreted, the lease was to begin at the death of Mr. Waldo, the term was for an indefinite period, might not exceed twelve years, and was not, therefore, within the inhibition of the constitutional provision, citing: *Barton* v. *Gray*, 57 Mich. 622; *Smalley* v. *Mitchell*, 110 Mich. 650; *Carr* v. *McCarthy*, 70 Mich. 258; *Stephens* v. *Reynolds*, 6 N. Y. 454; *Parsell* v. *Stryker*, 41 N. Y. 480; *Rutherford* v. *Graham*, 4 Hun (N. Y.),

796; *Odell* v. *Durant*, 62 N. Y. 524; *Parish* v. *Rogers*, 20 App. Div. (N. Y.) 279; *Robertson* v. *Hayes*, 83 Ala. 290; *Wegner* v. *Lubenow*, 12 N. Dak. 95.

In the case of *Parish v. Rogers*, upon which counsel strongly rely as closely analogous to the case at bar, the term of a lease of agricultural land was during the natural life of the lessor and his wife, reserving an annual rental of $300. A majority of the court held:

" Where the term is specified in the lease and exceeds the limitation, it is void per se; but where it is left indefinite and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void ipso facto, as being made for a period longer than twelve years. Non constat but that the estate will terminate within the period."

The question whether a lease for life violates the constitutional provision was raised in *Nichols* v. *Nichols*, 94 Mich. 569, but was not decided. In *Case* v. *Green*, 78 Mich. 540, the validity of such a lease was attacked upon the ground that it was in contravention of the statute against perpetuities, but the point that it violated the constitutional provision as to agricultural leases does not appear to have been raised and is an open question, so far as our decisions are concerned.

None of the cases cited are precisely in point but it is contended that they are not distinguishable in principle and rule it by analogy. We do not agree with this conclusion.

The indorsement on the lease was not a part of the lease any more than the verbal instruction to Mr. Crossman. At most, the indorsement only affected the time when the lease just as executed should become effective.

"It is the well-established rule in this State that the delivery of a deed by a grantor to a third party, to be by him delivered to the grantee after the grantor's death, is valid. It conveys the fee, and operates as a conveyance in prasenti, though the enjoyment is postponed until the grantor's death." *Meech* v. *Wilder*, 130 Mich. 29.

"It is very well settled that a lease may be made to

take effect in future, and that the estate does not begin with the contract, but with the future period." *Whiting v. Ohlert*, 52 Mich. 462.

"The general rule is that a lease takes effect so as to vest the estate or interest to be conveyed only from its delivery, and not from its date, or the time the signatures were affixed to it." 24 Cyc. p. 905.

Applying these rules to the case at bar, the defendant's lease became effective on and spoke from the 3d day of October, 1906, so far as the term was concerned, and as its termination was fixed by the lease as January 19th, 1920, it was for a period longer than 12 years. The term was not really indefinite as in the case of a lease during the life of another where the term begins at a definite day but may terminate at any time within the range of human life. In the case at bar, the term was for a definite period, viz., from the death of Mr. Waldo to the 19th day of January, 1920. The situation was the same, in legal effect, as though the lease had been executed October 3, 1906.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.