ALVIN G. ELIASON, Plaintiff and Appellant, v. ALBERT
H. ELIASON and LEO SHELLERUD, Defendants and Re-
spondents.

No. 11386.
Submitted April 4, 1968.
Decided July 23, 1968.
443 P.2d 884.

Baxter Larson, argued, Wolf Point, Samuel W. Masten, argued, Sioux Falls, for plaintiff and appellant.

Leonard H. Langen, argued, Glasgow, for defendants and respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by plaintiff from a judgment of the district court of Valley County quieting title in defendants to certain land and cancelling two instruments under which plaintiff claims title. The case was tried before the Honorable Thomas Dignan, district judge, without a jury.

Plaintiff is Alvin G. Eliason, who brought this action to quiet title in himself to the subject land; he will hereafter be referred to as plaintiff Alvin or merely as Alvin. One of the defendants is Albert H. Eliason, the uncle of plaintiff Alvin, who was adjudged in the instant case to be the owner of the land; he will hereafter be referred of the land; he will hereafter be referred to as defendant Albert or as Albert. The other defendant is Leo W. Shellerud, the lessee of the land from Albert subsequent to the events forming the basis of this action; he will be referred to as defendant Shellerud.

The land in question is a half section of agricultural land near Opheim, 301 acres of which are tillable. It was defendant Albert's homestead and, over the years, sometimes Albert had farmed it himself and sometimes he had leased it to others for farming. In November or early December, 1961, defendant Albert was visiting plaintiff Alvin and his wife at their home in Canton, South Dakota, at which time conversations were had regarding this land. The substance of these conversations is sharply in conflict. According to plaintiff Alvin, a conversation occurred one night in the kitchen of their home at which time defendant Albert said "It's getting to where I don't want to farm that place up there anymore. I want to dispose of it and I'll make you folks a proposition. If you will farm it for ten years and give me a third of the crop and pay the taxes on it, we'll make that kind of a deal;" and on the following morning Alvin accepted this proposal. Alvin's wife generally substantiated this conversation but did not mention any conversation concerning payment of taxes. Ac-

cording to defendant Albert, on the other hand, they did talk about farming the land but no agreement of any kind was made at that time. Alvin had indicated that he would "like to get ahold of some land" and defendant Albert had said "maybe I can fix it so you can" and that he thought he could get Alvin "this piece of land the easy way." No conversation was had concerning a sale, gift or lease of the land at that time "but we figured, of course, it would have to be a lease."

Shortly thereafter defendant Albert left for California, returning to Alvin's house in Canton in February, 1962. At this time Albert offered to sell his farm machinery to Alvin for cost and Alvin was going to come to Montana and farm the land. Alvin came to Montana about April 1, 1962, and he and Albert seeded the land. On April 16, after the crop was in, they went to a Glasgow attorney and signed a 12 year lease wherein Alvin was to farm the land, pay Albert one-third of the crop as rental, pay the taxes on the land, and "farm said lands annually in a good and workmanlike manner" and "summerfallow said lands not planted to crops, in accordance with local custom." They returned to the attorney's office on April 27, at which time Albert refused to sign a "crop contract for sale of land," the substance of which provided for Alvin to purchase the land for $12,000 without interest payable in annual installments of one-third of the crop on the land to be credited against the purchase price with any unpaid balance payable by December 31, 1973. Alvin testified he had never seen the contract until the time of trial. On this same date Albert signed a warranty deed on the land to Alvin and placed it in escrow with the attorney. The attorney also drafted an "Escrow Agreement" which he signed providing he would hold the deed and deliver it to Alvin "upon the happening of one of the following named events: (1) Upon April 1, 1974, or (2) The death of said Albert H. Eliason which ever of said events first occur." Neither Albert nor Alvin signed the "Escrow Agreement" although both were furnished copies by the attorney. The most that

can be said of these agreements beyond their express terms is that the evidence surrounding the circumstances, conversations and agreements between Albert and Alvin leading to their preparation is vague in many particulars and conflicting in others.

With Albert's assistance per agreement between the two of them, Alvin farmed the land in 1962, retaining his employment with the John Deere implement dealer in Canton, South Dakota. In 1963, 1964 and 1965 Alvin farmed the land himself, made improvements on the house and buildings, paid the taxes on the land, and gave Albert his one-third share of the crop.

From 1962 onward Alvin would spend part of the year on the farm near Opheim farming the land and the balance of the year he would live in Canton working at other employment. Additionally, during part of this time, at least, and including 1966, plaintiff Alvin was farming an additional 800 acres of land leased from another.

In 1966, everything continued normally as before until Alvin and his wife left the farm in September, after the harvest had been completed and the summerfallowing done, and returned to South Dakota. The evidence is conflicting as to the condition of the summerfallow at the time Alvin left and as to whether the land had been summerfallowed "in accordance with local custom." After Alvin left, Albert looked over the land, was dissatisfied with the summerfallowing that had been done, hired and paid defendant Shellerud to do additional summerfallowing, paid the 1966 taxes, and served Alvin with a notice of cancellation of the lease by reason of Alvin's failure to farm the land "in a good workmanlike manner" and to summerfallow "in accordance with local custom." This notice of cancellation of the lease was given in November, 1966, and also advised Alvin of Albert's intention to lease the land to someone else. On January 3, 1967, defendant Albert leased the land to defendant Shellerud. In May, 1967, Alvin was still

in possession of the land, was served with a notice to quit, but he remained in possession.

During the period of time that Alvin was farming the subject land, he made certain improvements to the residence and other buildings thereon at a cost of approximately $880 for materials, exclusive of his labor. He also purchased two granaries at a cost of about $100. Additionally, Alvin purchased Albert's used farm machinery at the cost to Albert without interest and paid Albert approximately $2,000 for it in irregular payments from time to time during this period. The trial court found that the improvements to the farm were ordinary repairs that any tenant would make and that the farm machinery purchased by Alvin was the "minimal amount required to farm the lands that the plaintiff was farming."

On March 17, 1967, Alvin commenced this action against Albert and Shellerud to quiet title in himself to the land in question, to bar and enjoin defendants Albert and Shellerud from asserting any interest therein, and to make them respond in damages for any wrongful withholding of possession of the land. Defendants answered by general denial and pleaded four counterclaims against plaintiff Alvin: (1) unlawful detainer, (2) ejectment, (3) an action to quiet title in themselves to the subject land, and (4) an action to reform the "Escrow Agreement" and to remove the cloud on the title created thereby. Trial was had before Judge Dignan, sitting without a jury, who subsequently entered findings of fact, conclusions of law, and a judgment (1) declaring the written lease between Albert and Alvin null, void and cancelled, (2) declaring the warranty deed from Albert to Alvin null, void and cancelled, (3) requiring Alvin to pay Albert the 1966 taxes, (4) permitting Alvin to remove two granaries on the land, (5) quieting title in Albert to the land, subject to Shellerud's lease, and (6) requiring Alvin to deliver up to Albert possession of the land including improvements (except the two granaries)

and growing crops. Plaintiff Alvin appealed from this judgment.

The issues presented by plaintiff Alvin for review upon this appeal can be summarized in the following manner:

(1) Did Albert agree to convey the subject land to Alvin?

(2) If so, what was the substance of such agreement?

(3) What relief is Alvin entitled to under such agreement?

At the outset it should be noted that plaintiff Alvin's claim for relief herein is bottomed on the existence of an oral agreement or contract by defendant Albert to convey the subject land to Alvin. Although more will be said later in this opinion concerning the written lease, the warranty deed, and the "Escrow Agreement," all of plaintiff Alvin's claims of ownership of the land flow from one source—an oral agreement or contract claimed to have been made in Canton, South Dakota, in November or early December, 1961, wherein Albert agreed to convey the land to Alvin.

The district court made the following findings of fact concerning this oral agreement:

"That in November or December of 1961 and again in February of 1962, in Canton, South Dakota, the defendant, Albert H. Eliason, and the plaintiff had conversations concerning the farming of defendant's lands involved in this action. There is no satisfactory proof before this Court as to what the agreement was, if any, made at that time."

The district court also entered the following conclusion of law (in part) relating to this oral agreement:

"That the plaintiff failed in his burden of proof by a preponderance of the evidence to prove an agreement to convey the lands described in Paragraph I of the Findings * * *."

The function of the Supreme Court in this respect is to determine whether there is substantial evidence to support this finding of fact (section 93-216, R.C.M.1947; White v. Nollmeyer, 151 Mont. 387, 443 P.2d 873, 25 St.Rep. 466; Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Kyser v. Hiebert, 142

Mont. 466, 385 P.2d 90) and will not disturb the trial court's findings of fact unless there is a clear preponderance of the evidence against such findings. Studer Const. Co. v. Rural Special Impr. Dist., 148 Mont. 200, 418 P.2d 865; Duffie v. Metro. San & Storm Dist., 147 Mont. 541, 417 P.2d 227; Kosel v. Stone, 146 Mont. 218, 404 P.2d 894; Larsen Farms v. City of Plentywood, 145 Mont. 509, 402 P.2d 410. Additionally the Supreme Court determines whether the trial court's conclusions of law are supported by its findings of fact. Section 93-216, supra; Bender v. Bender, supra.

██ ██ In the instant case the district court found, in effect, that no oral agreement between plaintiff Alvin and defendant Albert in Canton was proved. We find it unnecessary to set out the evidence on this in detail in this opinion. Suffice it to say that the evidence on this point was sharply conflicting, not only from the standpoint of the direct testimony of the parties who participated in the discussion but also from the subsequent conduct of the parties. In our view there is nothing in the subsequent conduct of plaintiff Alvin, Alvin's wife, or defendant Albert, apart from statements attributed to one by the other, that indicates whether there was an agreement by Albert to convey the land to Alvin or not. As we view it, the existence of such an agreement is dependent largely, if not entirely, upon the credibility of the three participants in the conversations in Canton and the weight to be given their testimony. The credibility of the witnesses and the weight to be given their testimony is a matter for the district court's determination in a non-jury case (Notti v. Clark, 133 Mont. 263, 322 P.2d 112; Ballenger v. Tillman, 133 Mont. 369, 324 P.2d 1045) and the Supreme Court will sustain such determination by the trial court based on substantial conflicting evidence. Hammond v. Knievel, 141 Mont. 433, 378 P.2d 388; Havre Irrig. Co. v. Majerus, 132 Mont. 410, 318 P.2d 1076. The trial court, having observed and considered the appearance of the witnesses upon the witness stand, their manner of testify-

ing, their apparent candor or want of candor, in addition to the testimony itself, is in a better position than this Court to decide questions of credibility of witnesses and the weight to be given their testimony. Under the circumstances disclosed here the trial court having determined that no agreement by Albert to convey to Alvin was proved and there being substantial evidence to support such finding, we will not disturb it upon appeal.

There being no agreement made by defendant Albert in Canton to convey the land to plaintiff Alvin, and plaintiff Alvin's claim for relief being premised on such an agreement, plaintiff Alvin's claim of ownership herein must fail. Without such agreement there is no consideration for the deed placed in escrow. Alvin was not required to pay or do anything more to secure the deed than he was already required to pay or do under the lease.

The question of a gift from Albert to Alvin by reason of execution of the deed and delivery to the escrow holder under the escrow instructions is not in issue in this case. Nowhere in the briefs or oral argument is that contention raised by Alvin. Alvin's claim was tried and appealed on the basis of a contract or agreement by Albert to convey the land to him; at no time was any contention made that Albert was making a gift of the land to Alvin.

Because there was no consideration moving from Alvin to Albert for the deed or for the escrow and because the question of gift is not an issue in this case, the deed was null, void and subject to cancellation. It was so declared by the trial court in its findings. We will not disturb these findings because they are based on substantial evidence.

We pass on to consideration of Alvin's rights under the lease. The lease is clearly invalid and unenforceable. Section 67-408, R.C.M.1947, provides, in part, as follows: "No lease or grant of agricultural lands for agricultural purposes, for a longer period than ten (10) years, in which shall be

reserved any rent or service of any kind, shall be valid * * *." Such a prohibited lease is completely void; it is not valid for the 10 year permitted term and void as to the excess prohibited term. 17 A.L.R.2d 570; Waldo v. Jacobs, 152 Mich. 425, 116 N.W. 371. It is generally held that a tenant holding under a void lease of agricultural land who pays an annual rental to the landlord is a tenant from year to year. Coleman v. Fletcher, 238 Mo.App. 813, 188 S.W.2d 959; 51 C.J.S. Landlord & Tenant § 135, page 732; Phelan v. Anderson, 118 Cal. 504, 50 P. 685; 30 Cal.Jur.2d, Landlord and Tenant § 42, page 169. In Montana it has been held that entry by a tenant under an invalid oral lease may create a tenancy from year to year, month to month, or a tenancy at will depending upon the circumstances (Roseneau Foods, Inc. v. Coleman, 140 Mont. 572, 374 P.2d 87), the presumption being a year to year tenancy. Section 42-203, R.C.M.1947. Accordingly we hold that where, as here, a tenant rents agricultural land under an invalid lease, pays an annual rental, and there is no usage or circumstances to the contrary, a year to year tenancy is created. The terms of the invalid lease, except as to the duration of the tenancy, are implied in law to the year to year tenancy thus created. Hyatt v. Romero, 190 Md. 500, 58 A.2d 899, and cases therein cited; Stores Building Corporation v. Conover, 204 Va. 457, 132 S.E.2d 458. Thus the requirement that Alvin farm the subject land "in a good workmanlike manner" and that he summerfallow it "in accordance with local custom" is implied in law to his year to year tenancy.

The trial court found that Alvin breached this condition of his tenancy by reason of his failure to summerfallow the land which was badly in need of it due to wild oats and as a consequence failed to farm it "in a good and husbandlike manner." Here again, the evidence is conflicting. According to plaintiff Alvin and his witness, Berland, such was not the case. On the other hand, the testimony of both defendants, the photographs submitted in evidence, and the testimony of

several other witnesses called by both parties tend to substantiate this finding. Applying the rules heretofore announced in this opinion concerning our review of the findings of the trial court based on conflicting evidence, we will not disturb such findings where they are supported by substantial evidence unless there is a clear preponderance of evidence against them. Accordingly, the trial court's findings on this point will not be disturbed. Alvin's tenancy was validly terminated under the "notice of cancellation" and the "notice to quit" and because it was clearly not renewed.

Plaintiff Alvin further argues that equity will not enforce a harsh forfeiture under the circumstances of the instant case. Although this is undoubtedly a general equitable principle, it is not one of universal application to all cases. Assuming, without deciding, that a harsh forfeiture was involved in this case, the principle would be inapplicable here because the breach involved is in the nature of damage or waste to the land and the equities of the owner of the land must be taken into consideration. Here there is substantial evidence, not only of volunteer growth on the land that was summerfallowed, but growth of wild oats that were in the process of "heading out" with consequent damage over a period of years to the remaining land that was not summerfallowed. Equity does not ordinarily relieve against a forfeiture involving a breach of a covenant involving waste or damage to the land. 32 Am.Jur., Landlord and Tenant, § 893, page 756; Anderson v. Hammond, 19 Or. 446, 24 P. 228; Pfitzer v. Candeias, 53 Cal. App. 737, 200 P. 839. While we have assumed for the purpose of this discussion that a harsh forfeiture was involved here, its existence is questionable in the instant case.

We also note that plaintiff Alvin's contentions of an estoppel and that he is entitled to specific performance are bottomed on proof of an agreement or contract by Albert to convey the land to Alvin which is absent in this case. Plaintiff

Alvin's arguments relative to the statute of frauds and part performance are immaterial here because the statute of frauds was not pleaded in this case nor were the court's findings in any way based thereon.

We have noted the remaining arguments contained in plaintiff Alvin's brief and have examined the evidence, findings and judgment of the district court and find that the latter should be affirmed in all respects.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.