FILED
Clerk
District Court

FEB 02 1987

For The Northern Mariana Islands
By _____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | |
|---|---|
| CONCEPCION S. WABOL and ELIAS S. WABOL, | CIVIL APPEAL NO. 86-9006 |
| | CTC NO. 84-396 |
| Plaintiffs/Appellants, | |
| | OPINION OF THE COURT |
| vs. | |
| FILOMENIA W. MUNA, VICTORINO U. VILLACRUSIS, PHILLIPINE GOODS, INC., and TRANSAMERICA CORP., | |
| Defendants/Appellees. | |

Attorney for Appellees:  JOE HILL
P.O. Box 917
Saipan, CM 96950
Tel. (670) 234-6806

Attorney for Appellants:  CHARLES K. NOVO-GRADAC
WHITE, NOVO-GRADAC, AND THOMPSON
P.O. Box 222 CHRB
Saipan, CM 96950
Tel. (670) 234-6547

BEFORE: LAURETA and KELLER[*], District Judges, and MUNSON[**].

KELLER, District Judge:

BACKGROUND

This case revolves around a 1978 lease agreement between Filomenia W. Muna, lessor, and Philippine Goods, Inc. (hereinafter PGI), lessee. The lease was for a term of thirty years with a twenty year option to renew. The Wabols, appellants in this action, claim to be the owners of the property described in the lease pursuant to a partition, apparently among several family members including Filomenia Muna. Notwithstanding this claim of ownership, Muna continued to collect rent. As a result of Muna's actions, the appellants brought suit to collect the rent allegedly due from Muna as well as to invalidate the lease agreement with PGI.

Having settled the first three counts of the four count complaint in a judgment by stipulation; the parties thereafter litigated with respect to count four. The fourth cause of action was against PGI to declare the lease void as a violation of Article XII of the Constitution of the Northern Mariana Islands (hereinafter Constitution) because PGI was not a

[*] The Honorable William D. Keller, United States District Judge, Central District of California, sitting by designation.
[**] The Honorable Alex R. Munson, Chief Justice, Trust Territory High Court, sitting pursuant to 48 U.S.C. §1694b.

966

"person" of Northern Marianas descent and the lease term exceeded forty years. Both appellants and appellees moved for summary judgment. The trial court denied appellees' motion and denied appellants' motion "except to the extent that defendants have a lease on the subject premises for the term of 30 years, ending on January 1, 2009 and only an option to extend or renew for an additional 10 years to January 1, 2019." It is this ruling that is the subject of our review.

Count Four, as discussed above, involves an interpretation of Article XII of the Constitution. Article XII of the Constitution provides:

Section 1: Alienation of Land.

The acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent.

Section 2: Acquisition. The term acquisition used in section 1 includes acquisitions by sale, lease, gift, inheritance or other means. A transfer to a spouse by inheritance is not an acquisition under this section. A transfer to a mortgagee by means of a foreclosure on a mortgage is not an acquisition under this section if the mortgagee does not hold the permanent or

long-term interest in real property for more than five years.

Section 3:  Permanent and Long-Term Interests in Real Property.  The term permanent and long-term interests in real property used in section 1 includes freehold interests and leasehold interests of more than forty years including renewal rights.

Section 4:  Persons of Northern Marianas Descent.  A person of Northern Marianas descent is a person who is a citizen or national of the United States and who is of at least one-quarter Northern Marianas Chamorro or Northern Marianas Carolinian blood or a combination thereof or an adopted child of a person of Northern Marianas descent if adopted while under the age of eighteen years.  For purposes of determining Northern Marianas descent, a person shall be considered to be a full-blooded Northern Marianas Chamorro or Northern Marianas Carolinian if that person was born or domiciled in the Northern Mariana Islands by 1950 and was

968

a citizen of the Trust Territory of the Pacific Islands before the termination of the Trusteeship with respect to the Commonwealth.

Section 5: Corporations. A corporation shall be considered to be a person of Northern Marianas descent so long as it is incorporated in the Commonwealth, has its principal place of business in the Commonwealth, has directors at least fifty-one percent of whom are persons of Northern Marianas descent and has voting shares at least fifty-one percent of which are owned by persons of Northern Marianas descent as defined by section 4.

Section 6: Enforcement. Any transaction made in violation of section 1 shall be void ab initio. Whenever a corporation ceases to be qualified under section 5, a permanent or long-term interest in land in the Commonwealth acquired by the corporation after the effective date of this Constitution shall be forfeited to the government.

DISCUSSION

## I. APPLICABILITY OF ARTICLE XII TO THE LEASE

There is no question that the lease falls within the prohibitions of Article XII of the Constitution. The term of the lease is for thirty years with a twenty year option to renew which can be exercised by PGI without any reciprocal obligation required of the lessor. Under §3 of Article XII, a leasehold interest exceeding forty years, including renewal rights, is considered to be "long-term" for purposes of §1. Therefore, based upon the language of §1, the land can only be transferred to "persons of Northern Marianas descent."

As for the alienage of PGI, §5 of Article XII lists four requirements that a corporation must meet in order for it to be considered a "person of Northern Marianas descent": 1) it must be incorporated in the Commonwealth; 2) it must have its principal place of business in the Commonwealth; 3) it must have a board of directors, 51% of whom must be of Northern Marianas descent; and, 4) it must have outstanding voting shares of which 51% are owned by persons of Northern Marianas descent. PGI fails the above test for at least two reasons: first, only one-third of its directors were of Northern Marianas descent; and, second, only fifty percent of the stock

970

was owned by persons of Northern Marianas descent. Accordingly, PGI is an alien corporation and the restrictions against alienation enunciated in §1 apply to the corporation.

II.  APPLICATION OF THE PROHIBITION AB INITIO

Section 6 of Article XII of the Constitution says that "Any transction made in violation of section 1 shall be void ab initio."  The plain meaning of "void ab initio" is a nullity from the beginning.  The language of §6 explicitly states that this lease agreement was nugatory from the time of its signing and thereafter.

The trial court commenced its analysis by stating that the sale of a freehold interest would be void from the outset and would be neither divisible nor subject to reformation.  Yet, the judge differentiated between the sale of a freehold interest and the acquisition of a leasehold interest.  Although this court can understand the concern of the trial judge, the fact remains that given the purpose of the legislation, there is no legal basis for such a distinction.

A number of cases cited by the appellants support the proposition that a lease can't be divided.  See, e.g., Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71 (1893); Eliason v. Eliason, 151 Mont. 409, 443 P.2d 884 (Mont. 1968).  In these cases, the courts invalidated the entire obligation and not just a part thereof.  In Parthey v. Beyer, 238 N.Y.S. 412 (1930), the New York court held that an agricultural lease for ten years with an option to renew for five years violated the

971

New York constitutional prohibition against leases of agricultural land exceeding twelve years. The court went on to hold that an option to purchase the land, which was part of the underlying lease agreement, must also fail. The court wrote, "[T]herefore, the doctrine that where a promise is made upon a consideration, part of which is unlawful, the whole contract is void applies here." Parthey, 238 N.Y.S. at 417.

Based on the foregoing, this Court holds that "void ab initio" means what it says; that the lease was void from the beginning.

III. CONSISTENCY OF ARTICLE XII OF THE CONSTITUTION WITH THE MANDATE OF §805(a) OF THE COVENANT

On February 15, 1975, the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States (hereinafter Covenant) was signed. After approval by the United States Congress, it was enacted on March 24, 1976. The Covenant sets out the framework for the government of the Northern Mariana Islands (hereinafter NMI), their constitution and their relationship to the United States.

Section 805(a) of the Covenant mandates certain restraints on the alienation of land to foreigners. Article XII of the Constitution was intended to implement that mandate. However, appellees contend that the two documents are inconsistent because the Covenant discusses "alienation" and the Constitution discusses "acquisition". Appellees' argument is a spurious one. It should be noted that the Constitution does indeed discuss alienation. Section 1 of Article XII

begins with the words "alienation of land". Moreover, §805(a) of the Covenant discusses "acquisition." It goes on to expressly say " . . . to restrict the acquisition of such interests to persons of Northern Marianas descent." (Emphasis added). Therefore, both the Covenant and the Constitution discuss both "alienation" and "acquisition". Besides, alienation and acquisition are opposite sides of the same coin. Accordingly, Article XII effectively implements the mandate of §805(a) of the Covenant.

IV.   THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
      AMENDMENT

The appellees contend that Article XII of the Constitution violates the fourteenth amendment of the United States Constitution.   Such an analysis must overcome the fact that the first two words of the fourteenth amendment, say "no state"; thus, a prerequisite to invoking the fourteenth amendment is a finding of state action.   And, the fourteenth amendment has been held not to apply to territories ex proprio vigore.   See, District of Columbia v. Carter, 409 U.S. 418, 424-25 n.11, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); South Porto Rico Sugar Co. v. Buscaglia, 154 F.2d 96, 100 (1st Cir. 1946).

However, the analysis goes further.   Although the fourteenth amendment may not apply independently of any congressional action, it does apply pursuant to the Covenant, enacted by the United States Congress as law.   Joint Resolution of March 24, 1976, Pub. L. No. 94-241, 90 Stat. 263, reprinted in 48 U.S.C. §1681.   Section 501(a) of the Covenant explictly

973

makes the fourteenth amendment applicable to the NMI. It states in pertinent part that,

> To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several states. . . Amendments 1 through 9, inclusive;. . .Amendment 14, section 1; . . . (emphasis added).

Yet, §501(a) is limited by §501(b) which states,

> The applicability of certain provisions of the Constitution of the United States to the Northern Mariana Islands will be without prejudice to the validity of and the power of the Congress of the United States to consent to sections 203, 506, and 805 and the proviso in Subsection (2) of this Section.

Included within the exceptions enumerated in §501(b) is §805, which discusses land alienation and states,

> Except as otherwise provided in this Article, and notwithstanding the other provisions of this Covenant, or those provisions of the Constitution, treaties or laws of the United States applicable to the Northern Mariana Islands, the

974

Government of the Northern Mariana Islands, in view of the importance of the ownership of land for the culture and traditions of the people of the Northern Mariana Islands, and in order to protect them against exploitation and to promote their economic, advancement and self-sufficiency:

(a) will until twenty-five years after the termination of the Trusteeship Agreement, and may thereafter, regulate the alienation of permanent and long-term interests in real property so as to restrict the acquisition of such interests to persons of Northern Mariana Islands descent; and

(b) may regulate the extent to which a person who may own or hold land which is now public land.

Accordingly, the question becomes whether Congress, pursuant to its powers over territories set forth in Article IV §3[2] of the United States Constituion, could approve a Covenant which contained a provision , §805, which might violate the Constitution.

Congress cannot pass any law whch violates the United States Constitution.  U.S. v. Odneal, 565 F.2d 598 (9th Cir. 1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978).  Although the fourteenth amendment does not apply

to acts by the federal governement, District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), reh'g denied, 410 U.S. 959 (1973), the fifth amendment has been construed to contain an equal protection component. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Therefore, the question is whether congressional approval of §805 violates the equal protection clause of the fifth amendment. As discussed earlier, §805 discriminates based on alienage. Ordinarily, the test for such discrimination is deferential to the political branches of the federal government. Mathews v. Diaz, 426 U.S. 67, 81-84, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). More particularly, in this instance, the appropriate test is whether the special treatment can be rationally tied to Congress' unique obligation vis-a-vis the Northern Mariana Islands.

In analyzing the applicability of the fourteenth amendment to the NMI, the trial court aptly analogized the situation in the NMI to that of the American Indians. With respect to the Indians, the courts have held that traditional analysis does not apply to governmental action protecting Indians. United States v. Decker, 600 F.2d 733 9th Cir. 1979), cert. denied, 444 U.S. 855 (1976). The proper test regarding Indians was stated in the following way: "as long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." Decker, 600 F.2d at 741. This Court agrees with the trial judge that this is and should be the proper test for the NMI; that is, a rational relation to Congress' unique

obligation to the peoples of the NMI.

Given the history of occupation by foreigners of the NMI, as well as the scarcity of land and the cultural traditions of the people, all of which are discussed in the lower court's order as well as in 65 Georgetown Law Journal 1373; Covenant §805 and Article XII of the Constitution are certainly rationally related to the unique obligation which the United States Congress owes to the people of the NMI. Therefore, these provisions survive scrutiny under the fifth amendment.

Appellees further contend that §5 of Article XII, which defines an alien corporation, does not survive Fourteenth Amendment scrutiny and exceeds §805(a) of the Covenant. Given the foregoing analysis, it must survive such scrutiny, in that if the elements were not required, it would be possible for a foreigner, or a group of foreigners, to incorporate themselves, buy land and circumvent the plain intent of §805(a) of the Covenant and Article XII of the Constitution.

Yet another argument raised by the appellees is that Article XII regulates participation in corporations. However, all that Article XII restricts is the purchasing of land by alien corporations, an activity which when consummated by corporations can be far more damaging to the policies underlying §805(a) than individual ownership of the land by aliens. Thus, these restrictions are in keeping with the policy considerations of ensuring that the precious resource of land is not usurped from the NMI.

977

## V.  STANDING TO SUE

Appellees contend that pursuant to §6 of Article XII, plaintiffs do not have standing to sue because the land escheats to the state.  However, since the corporation was an alien corporation from the outset of the transaction, the lease was void ab initio and the appellants have an interest in protecting their land.  Accordingly, the appellants have shown that they personally suffered some actual injury as a result of the illegal conduct of the defendants.  Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).  Therefore, they do have standing.

## VI.  ESTOPPEL

Appellees raise a host of issues under the theory of estoppel and related principles.  Basically, appellees first contend that by signing or approving the lease with PGI, appellants are estopped from challenging the validity thereof.  In order to successfully assert estoppel, the following must be shown:  the party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of the facts; the party to be estopped must have intended that its conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and, the other party must rely on the conduct to its prejudice.  California Cigarette Con., Inc. v. City of Los Angeles, 53 Cal.2d 865, 869, 3 Cal.Rptr. 675, 678 (1960).  PGI has failed to

demonstrate the requirements necessary for a successful application of the estoppel doctrine. For example, PGI failed to demonstrate that it was ignorant of its own status as an alien corporation.

More imporantly, public policy dictates that estoppel is inapplicable in this instance. Parthey v. Beyer, 238 N.Y.S. 412, 418 (1930). The purpose of Article XII is to protect native born Northern Marianas islanders from foreign exploitation. To hold that once they have been exploited they are estopped from protecting themselves would be to turn the rule on its head.

Appellees also contend that appellants' complaint is inconsistent because it brings suit on the contract in count two and then seeks to assert the non-existence of the contract in count four. However, a more careful reading of count two shows that appellant is suing not on the contract, but on a theory of implied contract. Furthermore, such inconsistent pleading is permitted. 5 C.Wright & A. Miller, Federal Practice and Procedure § 1283 (1969).

The appellees further urge that appellants benefited from a judgment order and then appealed the part which they found to be disadvantageous. The general rule is that the acceptance of the fruits of a judgment is inconsistent with the right to appeal the judgment. Wold v. League of Cross of Archdiocese of San Francisco, 107 Cal. App. 344, 290 P. 260 (1930). Notwithstanding the general rule, an appeal can be taken if it is from a decision on a separate and distinct cause of action. Wold, 107 Cal. App. 344. In this instance, count four was a

979

separate and distinct cause of action from the other counts.

More importantly, the language of the settlement judgment specifically reserved plaintiff's right to appeal the court's decision regarding count four. On page three of the judgment dated February 18, 1986, it explicitly states, "Approved as to form and content, without prejudice to appeal from summary judgment of July 31, 1985." (emphasis added). Therefore, appellants were justified in appealing count four of their complaint.

VII.  MOOTNESS

Appellees point out that in February of 1985, Article XII of the Constitution was amended so as to permit a lease for a period of 55 years. The lease in this case ran for 50 years; therefore, appellees contend that the issue has been mooted by the amended law. Generally speaking, however, changes in statutory laws and constitutional provisions apply prospectively, United States v. Security Indus. Bank, 459 U.S. 70, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (statutory laws); City of San Antonio v. San Antonio Public Service Co., Tex., 255 U.S. 547, 41 S.Ct. 428, 65 L.Ed. 777 (1921); 16 C.J.S. Const. Law § 36 (1984) (constitutional provisions), unless there is a clear manifestation of intent that they should be applied retroactively. Schalow v. Schalow, 163 Cal.App.2d 448, 329 P.2d 592 (1958). Here, no such intent was proffered by the parties. Therefore, even though the lease would be valid if entered into today, it must be judged on the law as it existed when the contract was formed and not by the applicable law

during this appeal. Interinsurance Exch. of Auto Club of Southern Cal. v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 23 Cal.Rptr. 592 (1962).

Furthermore, a contract, or provision thereof, which violates public policy when made is not validated by a later statutory change in that public policy. See, Jordan v. Consolidated Mut. Ins. Co., 59 Cal.App.3d 26, 130 Cal.Rptr. 446 (1976). Therefore, this lawsuit is not moot.

CONCLUSION

Based on the foregoing, the written lease agreement between the Wabols and PGI is declared void ab initio. The case is REVERSED AND REMANDED to the Commonwealth Trial Court to determine the terms and conditions of any obligations which may have arisen in quasi contract or as a result of a periodic tenancy. Additionally, the appellees have made several improvements on the land. On remand, the court should determine the amount, if any, of payment appellees should receive from the appellants in order to prevent unjust enrichment for those additions. The remaider of the trial court's rulings are AFFIRMED.

Judge Alfred Laureta

Judge Alex R. Munson

Judge William D. Keller