No. 97-160

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 117N


IN RE THE MATTER OF THE ESTATE
OF WILLIAM D. BANDEROB,

Deceased.



APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Wendell Stanton, Billings, Montana

For Respondent:

Robert L. Stephens, R.L. Stephens, Ltd., Billings, Montana



Submitted on Briefs: April 16, 1998

Decided: May 5, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.


¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996
Internal Operating Rules, the following decision shall not be cited as precedent

but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    This is an appeal by Darlene Durand (Durand) from the District Court's judgment entered on January 13, 1997, and from the court's underlying findings of fact and conclusions of law entered on December 31, 1996, declaring void certain transactions by Juanita Alvarez (Juanita), personally, and, purportedly, as personal representative of the estate of William D. Banderob (the estate).  We affirm in part and reverse in part.

                    Issues

¶3    We restate the issues on appeal as follows:

¶4    1.  Are the findings of fact of the District Court supported by substantial evidence and are the court's conclusions of law correct?

¶5    2.  Did the court err in ordering Roy Watson, individually, to remove or satisfy all mortgage indebtedness with respect to the subject real property?

                 Background

¶6    The decision appealed from followed an evidentiary hearing on the current personal representative's petition to set aside and to declare void various buy and sell agreements, an assignment of proceeds and a quit claim deed executed by Juanita with respect to real property of the estate, described as Township 2 North, Range 28 East, M.P.M., Yellowstone County, Montana, Section 33: SE¬SE¬, E«SW¬SE¬, NW¬NE¬ and SW¬NE¬ (the real property).

¶7    William D. Banderob died in 1986.  Intestate probate proceedings were commenced with the appointment of Clara Garza (Garza), the decedent's daughter, as personal representative.  Subsequently, it was determined that Mr. Banderob died testate and a second probate proceeding under another cause number was initiated by Juanita, the decedent's stepdaughter and devisee under his will.  From June 1988 until October 13, 1993, both probate proceedings coexisted, and there were two personal representatives.  On October 13, 1993, then presiding Judge William J. Speare signed an order relieving Garza of responsibility as personal representative and appointing Juanita as the sole personal representative of the estate.  On October 27, 1993, letters testamentary were issued by the clerk of the court to Juanita.

¶8    On April 20, 1994, Juanita resigned as personal representative, having been incarcerated at the State of Montana Women's Correction Center for some time prior to that date. Her daughter, Angelina Alvarez (Angelina), was appointed successor personal representative of the estate on June 20, 1994.

¶9    In attempting to administer the estate, Angelina determined that a

certain assignment of proceeds of sale of land in favor of Attorney Jack Sands (Sands) operated as a cloud upon the title to the real property. She further determined that certain buy and sell agreements in favor of Roy Watson (Watson) and Durand and in favor of Sands executed by Juanita as seller and covering the real property had never been performed by any of the parties with whom Juanita had dealt. One of these buy and sell agreements resulted in Juanita executing a quit claim deed covering the real property and dated October 13 or 14, 1993, to the Pryor Hill Ranch Trust (the Trust). Juanita purportedly signed this deed as personal representative of the estate. The deed does not recite that it was executed and delivered in exchange for any consideration.

¶10     It appears that this conveyance followed as a result of the buy and sell agreement dated October 2, 1993, in which Watson and Durand agreed to buy the real property from Juanita. This buy and sell agreement was signed by Juanita individually, and she personally retained the earnest money payment of $100. Moreover, the court found that the other consideration for this buy and sell agreement, part of which included a mobile home to be delivered to Juanita, was to be paid to or for her benefit personally. The trial court found that Watson, Durand and the Trust were apparently the same for purposes of this case. This finding, as regards Durand and the Trust, has not been challenged on appeal.

¶11  To clear title to and to preserve the estate real property, Angelina rescinded the buy and sell agreements and, in October 1994, petitioned the court to void the quit claim deed and the assignment of proceeds. On October 27, 1994, following the filing of Angelina's petition, the court ordered Watson and Durand, as trustees of the Trust, to appear and show cause why the October 13 or 14, 1993 quit claim deed should not be canceled. Durand, as a trustee of the Trust, filed her response to Angelina's petition and counter-claimed,
requesting that the court declare the quit claim deed valid and require specific performance of the buy and sell agreement, or, in the alternative, award actual damages plus reasonable costs and attorney fees.

¶12  Subsequently, Sands was joined in Angelina's petition in connection with the August 22, 1992, assignment to him of proceeds of sale of the real property and with respect to a December 31, 1992, buy and sell agreement in which he agreed to purchase the real property. Both of these documents, signed by Juanita individually, resulted from Juanita's attempt to secure and then to discharge past due and future obligations for rent which she personally incurred and expected to incur in leasing a residence from Sands. (Sands has not appealed the District Court's decision against him; accordingly, we refer to this aspect of the case in our further discussion only to the extent necessary.)

¶13     On March 21, 1995, the real property was mortgaged by the Trust to Associates Financial Services Co. of Montana, Inc. The mortgage was executed by Durand as trustee. A portion of the mortgage proceeds was tendered to Sands under the assignment, but the check was not cashed. Other sums were tendered to the attorney for the estate for fees.

¶14  Angelina's petition was tried to the court on December 8 and 13, 1995.

Angelina appeared by counsel and testified personally; Sands appeared, represented himself, and testified; and Durand and the Trust appeared by counsel.  Neither Durand nor Watson testified.

¶15  On the documentary evidence and testimony presented, the court found that during the time that there were two personal representatives, Juanita in her individual capacity, but not as personal representative of the estate, entered into several transactions including: the assignment of proceeds of sale and the buy and sell agreement to Sands and the buy and sell agreement with Durand and Watson. The court also found that on October 13 or 14, 1993,  Juanita, purportedly as personal representative, executed and delivered a quit claim deed for the real property to the Trust. Finally, on October 20, 1993, Juanita, individually, also executed a buy and sell agreement covering the real property in favor of a couple named Forsyth; however, the Forsyths were not joined in these proceedings.

¶16  The court concluded that at the time Juanita executed the buy and sell agreements to Watson and Durand and to Sands that she was not acting as a personal representative but, rather, was acting in the context of a beneficiary of the estate with an expectation of a future inheritance.  The court also determined that Juanita's assignment in favor of Jack Sands was for her personal obligation and not for any estate obligation.  Accordingly, the court declared the assignment of proceeds not to be a lien on estate property and the buy and sell agreement with Sands and buy and sell agreement with Watson and Durand and the quit claim deed to the Trust void.

¶17     The court also determined that Juanita executed only one document as personal representative of the Banderob estate, that being the quit claim deed to the Trust.  However, the court went on to conclude that this conveyance was not supported by any consideration flowing to the estate. Rather the court determined that the consideration for the deed was  to go directly to Juanita and that the consideration was not even tendered until 1995, well after Angelina was appointed personal representative and after she had notified the various parties that the estate was declaring the quit claim deed null and void.  The court concluded that regardless of whether the Trust could have legally paid Juanita as the sole heir of the estate to purchase the real property from the estate, the Trust did not give the consideration promised much less in a timely manner.  As a result, the court concluded that the quit claim deed was void for failure of adequate consideration.  From the District Court's judgment and these findings and conclusions, Durand and the Trust appeal.

## Standard of Review

¶18  We review a district court's findings of fact to determine whether they are clearly erroneous.  A district court's findings are not clearly erroneous if they are supported by substantial evidence; if the trial court has not misapprehended the effect of the evidence; and if our review of the record leaves us without a definite and firm conviction that a mistake has been committed.  We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct.  Matter of the Estate of Dern Family Trust (1996), 279 Mont. 138, 144, 928 P.2d 123, 127.  In this

case, we conclude that the court's findings of fact are not clearly erroneous and, with one exception, that the court's conclusions of law are correct.

### Discussion
#### I.

¶19 Are the findings of fact of the District Court supported by substantial evidence and are the court's conclusions of law correct?

¶20 It is axiomatic that to be valid, a contract requires identifiable parties capable of contracting. Section 28-2-102(1), MCA. Moreover, one cannot convey better title than that with which one is vested. Section 70-1-519, MCA. A personal representative has the power to contract to sell and to sell real property of an estate. Section 72-3-613(23), MCA. However, to acquire the powers and undertake the duties and liabilities of a personal representative, a person must be appointed by order of the court or clerk, qualify and be issued letters. Administration of an estate is commenced by the issuance of letters. Section 72-3-103, MCA. Here, it is undisputed that Juanita had not been appointed personal representative nor had she been issued letters testamentary at the time she executed the buy and sell agreement as seller to Watson and Durand and to Sands as purchasers. Accordingly, she, individually, was not capable of entering into a contract for the sale of the real property on behalf of the estate, nor was she capable of assigning the proceeds from the sale of any such agreement or otherwise encumbering estate property. The District Court correctly declared these various buy and sell agreements void and it correctly determined that the assignment did not constitute a lien against the real property.

¶21 As to the quit claim deed to the Trust, the uncontradicted testimony at the hearing was that the estate received no adequate consideration from Juanita's execution and delivery of the deed, and the court so found. Substantial evidence in the record supports this finding. Accordingly, the court correctly declared the deed to be a nullity. See Eliason v. Eliason (1968), 151 Mont. 409, 417, 443 P.2d 884, 889 (where there is no consideration for a deed moving from the grantee to the grantor and where the question of a gift is not at issue, the deed is null, void and subject to cancellation).

¶22 We have carefully reviewed the record and have considered, but are unpersuaded by, the various arguments raised by Durand in her briefs. We conclude that, with respect to this issue, the trial court's findings of fact are not clearly erroneous and that its conclusions of law are correct.

#### II.

¶23 Did the court err in ordering Roy Watson, individually, to remove or satisfy all mortgage indebtedness with respect to the subject real property?

¶24 The March 21, 1995 mortgage to Associates Financial Services Co. of Montana, Inc. was executed by Durand as trustee on behalf of the Trust. Durand was served and appeared on behalf of the Trust. However, it is undisputed that Roy Watson was not personally served with Angelina's

petition. While, on these facts, the District Court had jurisdiction to require the Trust and Durand and Watson, as trustees, to remove and satisfy all existing mortgage indebtedness incurred by the Trust against the real property, it had no jurisdiction to require Watson to do so in his individual capacity as he was not joined as a party to or served, individually, with Angelina's petition. See Kessinger v. Matulevich (1996), 278 Mont. 450, 460, 925 P.2d 864, 870 ("A person who is not a party to the action, cannot be a party to the judgment"). To the extent that the District Court's judgment requires Watson, individually, to satisfy the March 21, 1995 mortgage, it is reversed.

¶25 On appeal Durand contends that Watson was not even a trustee of the Trust but was in fact a beneficiary of that Trust. The problem with this argument is that there was nothing before the District Court supporting this contention and we will, accordingly, not address this argument further. See State v. MacKinnon, 1998 MT 78, ¶ 15, 55 St.Rep. 331, ¶ 15 (parties on appeal are bound by the record and may not introduce extraneous information into the proceedings).

¶26 The District Court's judgment dated January 13, 1997, is affirmed in all respects, except to the extent that the court required Roy Watson, individually, to remove and/or satisfy of record all existing mortgage indebtedness incurred by Darlene Durand and the Trust and secured by the March 21, 1995 mortgage in favor of Associates Financial Services Co. of Montana, Inc. That portion of the court's judgment is reversed.

¶27 Affirmed in part and reversed in part.

/S/  JAMES C. NELSON

We Concur:

/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART
/S/  TERRY N. TRIEWEILER
/S/  KARLA M. GRAY