THE STATE OF MONTANA, Acting by and Through the
STATE HIGHWAY COMMISSION of the State of Mon-
tana, Plaintiff and Appellant, v. THE WEST GREAT
FALLS FLOOD CONTROL AND DRAINAGE DISTRICT
et al., Defendant and Respondent.

No. 11745.
Submitted March 9, 1970.
Decided April 10, 1970.
Rehearing Denied April 30, 1970.
468 P.2d 753.

Robert L. Woodahl, Atty. Gen. Nicholas A. Rotering and Donald D. McPherson, Helena, James, Crotty & Fopp, Gene I. Fopp, argued, Great Falls, for appellant.

Swanberg, Koby & Swanberg, Randall Swanberg, argued, Great Falls, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

The State Highway Commission filed a declaratory judgment action in the district court against the West Great Falls Flood Control and Drainage District seeking a determination of whether it could be assessed on its highways within the District for flood control improvements contemplated by the District and if so, whether State highway trust funds could be used for this purpose in view of the anti-diversion amendment to the State constitution. The district court of Cascade county, Honorable B. W. Thomas, district judge presiding without a jury, entered judgment that the State Highway Commission was subject to assessment by virtue of its ownership of property within the District; that payment of such assessment would not violate the State Constitution; and ordered the State Highway Commission to pay such assessment when the amount thereof was determined in subsequent proceedings. From this final judgment, the Commission appeals.

Defendants and respondents are the West Great Falls Flood Control and Drainage District, hereafter called the District, and the three commissioners thereof, James E. Howard, Chairman, Leo J. Lesh, and Leonard Bobbett. The District is a corporate body politic formed under the provisions of sections 89-2201 to 89-2825, inclusive, R.C.M.1947 as amended, for the purpose of constructing and maintaining levees, dikes, and other facilities for flood control in and around parts of the west side of Great Falls, Montana and outlying areas. It was created by order of the district court of Cascade county on March 22, 1967. The boundaries thereof were established by order of the district court on August 28, 1967.

The District encompasses real property with improvements thereon owned or under lease by the Commission, said property consisting of land approximating 300 acres of State highway right-of-way and 8 miles of improvements described as follows:

Interstate 15: 218.82 acres of right-of-way and 3.2 miles of improvement.

Vaughn Highway (Primary Highway): 55.94 acres of right-of-way and 3.18 miles of improvement.

Sixth Street Southwest (Primary Highway): 8.59 acres of right-of-way and .76 miles of improvement.

Tenth Avenue South (Primary Highway): 14.56 acres of right-of-way and .825 miles of improvement.

The West Great Falls Flood Control project was designed by the United States Army Corps of Engineers to protect the properties within the boundaries of the District from the effects of a recurrence of floods of the severity of the 1953 flood, the 1964 flood, and a "design flood" having a peak flow of 65,000 cubic feet per second. The possibility of recurrence of a flood equal to the flow discharge of the 1964 flood is once every 160 years and the possibility of the design flood occurring is once during the next 250 years. It is contended by the District that the levee system will provide protection of lands and properties within the boundaries of the District from floods of the

magnitude of the 1953 flood, the 1964 flood and a design flood which would create a flood level of approximately one to two feet higher than those of prior floods.

The lands to receive benefits within the District were categorized into three classifications, namely, class A—those lands innundated by either the 1953 or 1964 floods, Class B—those lands that would be subject to innundation by the design flood, and Class C—those lands which would be above the elevation of the design flood but which would receive benefits such as access, protection of utilities and benefits to the general health and welfare.

On December 23, 1968, the District through its acting Commissioners gave notice to the Highway Commission assessing benefits and costs therefor to those portions of state highways located within the exterior boundaries of the District; the costs amounting to $205,047.68.

On December 30, 1968, the District Commissioners filed their third and final report with the court which report, among other things, requested the Court to approve and confirm said assessment. Thereafter, the District gave notice of hearings on remonstrances and other matters pertinent to the third and final report.

By remonstrance dated January 29, 1969, the State Highway Commission objected to confirmation of said assessment, contending, among other things, that the proposed assessment is in violation of Article XII, Section 1b, of the Constitution of the State of Montana, commonly referred to as the anti-diversion amendment.

Hearing on the third and final report began February 13, 1969, before Judge Thomas, and on February 21, 1969, the district court, upon determination that questions pertaining to constitutional issues were of paramount importance, indicated that the constitutional question developed by the proposed assessment against the State highway real property and improvements thereon should be a matter of separate hearing.

On April 17, 1969, for the purpose of segregating the issue of constitutionality from the main proceedings, the Highway Commission filed the instant declaratory judgment action pursuant to sections 93-8901 through 93-8916, R.C.M.1947, asking the district court to declare that payment by the Highway Commission of the proposed assessment would be illegal and unconstitutional for the reason that the expenditure of funds in payment of the assessment would be for purposes other than those enumerated in Article XII, Section 1b of the State Constitution; that is for purposes other than "cost of construction, reconstruction, maintenance and repair of public highways, roads, streets and bridges * * *".

Pursuant to stipulations entered into between the parties hereto and with the authority and concurrence of the district court, the declaratory judgment action was consolidated with the pending West Great Falls Flood Control and Drainage District proceedings and a separate trial under Rule 42(b) of the Montana Rules of Civil Procedure was ordered on all factual and legal questions bearing on the constitutional issue.

The segregated cause thereafter came to trial in the district court before Judge Thomas, sitting without a jury, on May 26, 1969; evidence was introduced by all parties, and the matter was taken under advisement on May 28, 1969. The trial court's findings of fact and conclusions of law were filed June 10, 1969, the court holding: that State highway facilities within the District would be subject to damage and cleanup operations in one degree or another in the event of occurrence of the design flood; that the construction of levees contemplated by the District would prevent this damage and cleanup expenses thereby avoiding costs of construction, reconstruction, maintenance and repair; and that this constitutes "preventive maintenance" and falls within the purposes for which highway funds may be expended under Article XII, Section 1b of the Montana Constitution (the anti-diversion amendment).

The court specifically concluded that the prevention of future

costs of reconstruction, repair and maintenance is preventive maintenance and within the definitions contained in Article XII, Section 1b; that the Highway Commission is not prevented by the Constitution of Montana from paying an assessment of the nature contemplated by the flood control district, and that the Highway Commission is specifically authorized by statute to make such a payment.

Judgment was entered June 13, 1969, in accordance with the foregoing findings and conclusions. The Highway Commission filed notice of appeal from this judgment on August 5, 1969.

The parties list six issues for review upon appeal. All are encompassed within two basic issues: (1) Can the State Highway Commission be assessed for flood control benefits by the District?, and (2) Can State highway trust funds be used to pay such assessment?

Plaintiff's position on the first issue is simply that there is no statutory authority for assessing the State or its agent, the State Highway Commission, for flood control and drainage benefits. Plaintiff points out that the assessing statute, section 89- 2330, R.C.M.1947, specifically makes counties, cities and towns subject to assessment and by application of the rule of statutory construction embodied in the Latin phrase ''expressio unius est exclusio alterius'' (the express mention of one thing implies exclusion of similar things not mentioned), authority to assess the State or its agency is withheld. Additionally, plaintiff points out, the express language of the assessing statute obligates the county through which the public highway runs for payment of these assessments.

On the other hand, defendants contend that the State and its agency are subject to assessment under the same assessing statute as the owner of land benefited by the contemplated flood control and drainage project. Defendants further argue that since the State as owner of the land has not been exempted from assessment, since the State is specifically authorized to pay the assessment out of the common school fund under section 89-2349,

R.C.M.1947, and since "all political subdivisions of the state of Montana, all agencies and department of the state government" are authorized to "expend funds for, and enter into agreements with drainage districts and any agencies of the United States government" for flood prevention under federal law pursuant to section 89-2825, R.C.M.1947, the conclusion is inescapable that the State Legislature by necessary implication authorized assessment against the State and its agency.

Whether streets or roads are subject to special assessment for improvements in local improvement districts depends upon the assessment authority granted such districts under state law. See 90 A.L.R. 1137, 1164. In Montana, the assessing statute is section 89-2330, R.C.M.1947, which provides in pertinent part:

"* * * What lands, easements, irrigation ditches, cities, towns, counties, individuals and other corporations and persons should be assessed for the payment of any part [of the cost of the improvements, etc.]. In apportioning such costs and expenses, the following principles shall be regarded and the following classes of property, persons, corporations and municipalities shall be assessed: * * *

"All lands which are becoming, or are liable to become swampy, bogged, or waterlooged, and which the construction of the proposed drainage system will prevent from being thus affected: * * *

"All lands upon which or through which, surface or seepage water will be prevented from flowing, or can be prevented from flowing, by virtue of the construction of the proposed drainage system;

"All lands which will sustain any direct benefit of any kind or character whatsoever * * *".

The statute then specifically provides for the assessment of counties, cities or towns, townsites, subdivisions, and all classes of land enumerated in the statute in proportion to benefits. Neither the State nor any agency thereof is mentioned by name in this assessing statute.

Two other state statutes are germane. Section 89-2349, R.C.M. 1947, specifically provides for payment of assessments on state owned land within drainage districts in the following language:

"LIEN OF ASSESSMENTS—PAYMENT OF ASSESSMENTS AGAINST STATE LANDS. * * *

"Upon presentation to the state auditor of an order of the district court having jurisdiction of such drainage district, properly certified, the auditor shall draw his warrant * * * on the common school fund * * * for the total amount that may assessed against any lands included in such district, the title to which is in the state of Montana, and upon payment of such warrant such lands shall thereby be relieved from the lien theretofore created for such costs of construction."

Thereafter in 1957, the Montana Legislature granted additional powers to drainage districts to enable them to cooperate and participate in federal flood control programs. This legislation is contained in Chapter 3, 1957 Session Laws. A broad statement of purposes of this legislation and the powers granted to drainage districts therein is contained in that part codified as section 89-2825, R.C.M.1947, which provides in part as follows:

"LEGISLATIVE PURPOSE—LIBERAL INTERPRETATION — COOPERATION — EXERCISE OF ADDTIONAL POWERS * * * The purpose of this act is to enable existing drainage districts or newly created drainage districts * * * to enter into cooperative agreements and programs to carry out the purposes of Public Law 566, 83rd Congress of the United States, or other laws of the National Congress pertaining to flood prevention * * *. This act is to be given a liberal construction to the end that these purposes may be carried out, and to this end *all political subdivisions of the state of Montana, all agencies and departments of the state government* * * * *are authorized to* cooperate with, *expend funds for,* and enter into agreements with drainage districts and any agencies of the United States government [*for the purpose of*

*carrying out the provisions of national and state laws pertaining to flood prevention]."* (Emphasis added; bracketed material paraphrased.)

It is undisputed that portions of Interstate Highway 15 and State primary highways designated as the Vaughn Highway, Sixth Street Southwest, and Tenth Avenue South are included within the exterior boundaries of the District. The interstate system includes, in addition to the roadway, fences along each side of the right-of-way, shoulders, embankments, and median strips, all seeded to grass, two interchanges, two bridges with built-up approaches and shoulders at each end, one being the bridge across the Sun River and the other being a bridge over 5th Avenue Southwest. All of these highways and improvements are under the jurisdiction of the State Highway Commission on the basis of ownership or lease.

While the basic assessing statute, section 89-2330, specifically mentions counties, cities, and towns as being subject to assessment and makes no mention of the State or its agencies, the highways and improvements are specifically made subject to assessment as "lands * * * liable to become * * * waterlogged", "lands upon which or through which, surface or seepage water will be prevented from flowing", and "lands which will sustain any direct benefit of any kind or character whatsoever". Such lands are subject to assessment without regard to ownership. Since the assessing statute subjects to assessment (1) certain classes of land benefited, as well as, (2) certain governmental entities benefited, omission of the State and its agencies from the latter does not render them nonassessable as owners of the former. Accordingly, the maxim of statutory construction—"expressio unius est exclusio alterius"—is inapplicable.

This interpretation of the assessing statute is further bolstered by the provisions of section 89-2349 heretofore quoted. If state law provides for payment of drainage district assessments on state-owned lands within the district, how can it be contended

that the State is not subject to such assessments? Plaintiff implies that this provision applies only to state-owned lands used for nongovernmental purposes. But there is no such limiting language in the statute and the State has referred us to no case authority. In a similar case involving an irrigation district rather than a drainage and flood control district, this Court held that state-owned school lands within the district were subject to assessment. Toole County Irrigation District v. State, 104 Mont. 420, 67 P.2d 989. Much of the same rationale and holding is applicable to the instant case.

Finally, there is a direct grant of authority to "all agencies and departments of the state government" to enter into cooperative agreements and programs for the purpose of carrying out the provisions of national and state law pertaining to flood prevention and to expend funds therefor. Surely this is inconsistent with any legislative intent to render the state nonassessable for flood control benefits to its property under the project here which was designed by the United States Army Corps of Engineers.

 We reject the State's contention that the assessing statute obligates Cascade county for payment of this assessment. The State relies upon the following language in the assessing statute, section 89-2330, R.C.M.1947:

"* * * and the following classes of property, persons, corporations and municipalities shall be assessed:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"The county or counties which the proposed drainage system traverses, or which will be benefited as to public health, convenience, welfare or improvement of any public highway \* \*"

The argument apparently is that "any public highway" includes the state and federal highways, and in support of this argument, section 32-2203(26), R.C.M.1947, is cited. This statute, which was first enacted in 1965, specifically includes state highways within the term "public highways". However, intro-

ductory to various definitions set out in this section, the legislature qualified the definitions by saying "unless the context otherwise requires". The context here requires that the county not be responsible for federal or state highways. It can hardly be assumed that the legislature intended that each county should be responsible for assessments for federal or state highways, when the traveling public, be it interstate or intrastate, receives the benefit of the special improvement.

 On the foregoing basis, we hold that the legislature has authorized assessment of the State through its agent, the State Highway Commission, for flood control benefits to its land and improvements within the exterior boundaries of the West Great Falls Flood Control and Drainage District.

The second basic issue on this appeal is simply whether State highway trust funds derived essentially from motor vehicle license fees and gasoline taxes can be used to pay any assessment against the State in the instant case. The constitutional attack is mounted under Article XII, Sec. 1b of the Montana Constitution, the so-called anti-diversion amendment which became effective December 8, 1956, providing as follows:

"No monies paid into the state treasury which are derived from fees, excises or license taxes relating to registration, operation or use of vehicles on the public highways or to fuels used for the propulsion of such vehicles, except fees and charges paid to the board of railroad commissioners of the state of Montana and the public service commission of Montana, or its successor or successors by motor carriers pursuant to law, shall be expended for other than cost of administering laws under which such monies are derived, statutory refunds and adjustments provided therein, payment of highway obligations, cost of construction, reconstruction, maintenance and repair of public highways, roads, streets, and bridges, and expenses authorized by the state legislature for dissemination of public information relating to the public highways, roads, streets and bridges of the state of Montana and the use thereof."

The district court found as conclusions of law:

"That the prevention of future costs of reconstruction, repair, and maintenance is in itself preventive maintenance within the definitions contained in Article XII, Sec. 1b of the Constitution of the State of Montana" and "That the State Highway Department is not prevented by the Constitution of Montana from paying an assessment of the nature contemplated by the said Flood Control District * * *''.

The district court thereafter entered judgment accordingly.

At issue at the hearing was whether under the facts of this case, payment of the assessment constituted an expenditure for "costs of construction, reconstruction, maintenance and repair of public highways, roads, streets, and bridges" and accordingly not proscribed by the anti-diversion amendment.

The thrust of the State's argument here is—that under the evidence produced at the hearing only speculative, conjectural, remote, indirect, negligible and token benefits to its highways and improvements are obtainable under the contemplated project; that when the costs and damages to the State on the one hand are balanced against the benefits to be received by the State on the other, no "net benefit" accrues to the State; and that under such circumstances the contemplated improvements to be made do not constitute "preventive maintenance" within the meaning of "cost of construction, reconstruction, maintenance and repair" used in the anti-diversion amendment.

The State goes on to argue that the language and purpose of the anti-diversion amendment should not be frittered away under the guise of construction and interpretation, nor should its language be extended beyond its plain and ordinary meaning. It also argues that: federal highway matching funds are not available for the payment of this special assessment; this is not a highway purpose; and state highway trust funds cannot be expended for non-highway purposes. Finally, the State contends that the history of disposition of license fee and fuel tax monies, both in the United States and in Montana, reflects a

progressive implementation of restrictions on their use for non-highway purposes to the exclusion of all other state or public activities.

We have carefully considered and analyzed the State's proposed findings of fact and conclusions of law submitted to the district court for its consideration following the hearing. It would unduly lengthen this opinion to set forth in detail herein, and such appears unnecessary to us in any event, as a summary will suffice.

Summarizing then, the State asked the district court to find that any benefits accruing to highways within the District were so unsubstantial they would not qualify as "construction, reconstruction, maintenance and repair" within the meaning of the anti-diversion amendment to the State Constitution. Thus, according to the State, the use of State highway trust funds to pay the assessment of the District is barred by the anti-diversion amendment.

The district court refused to adopt the State's proposed findings and conclusions. Instead the district court made contrary findings and conclusions, in part, as follows:

"7. * * * that substantial portions of the Interstate, Vaughn Highway and Sixth Street Southwest Highway are below the elevation which would be attained by the design flood, if the same should occur, with the result that all of these highways would be subject to the action of water flowing against, upon, and over the highways and their appurtenances; that the Interstate System includes, in addition to roadway, fences along each side of the right of way and shoulders, embankments, and median strips, all seeded to grass, and it includes two interchanges, built higher than the surrounding territory, a bridge across Sun River, and a bridge across 5th Avenue Southwest, both of which bridges have built-up approaches and shoulders at each end thereof;

"8. That all of these facilities would be subject to damage, in one degree of another, in the event of the occurrence of the

design flood, and in addition debris, driftwood, silt and similar material would be left upon the surfaces of the highways, requiring clean-up operations, and the cleaning out of various drainge structures;

"9. That the construction of the levees contemplated by the West Great Falls Flood Control and Drainage District would prevent this damage to highways, fences, seeded strips, and drainage structures, and would prevent the expenses of cleaning up heretofore referred to so that costs of construction or reconstruction, repair, and maintenance would be avoided".

As heretofore indicated, the district court concluded that under these circumstances, as set forth in its findings, the prevention of future costs of reconstruction, repair and maintenance, constituted preventive maintenance within the exclusion contained in the anti-diversion amendment. Accordingly, judgment was entered to the effect that payment of the assessment from highway funds was constitutional and permitted.

We first review the evidence to determine if there is substantial credible evidence to support the district court's findings of fact. In a declaratory judgment action as here, the district court determines issues of fact in the same manner as issues of fact are determined in other civil actions. Section 93-8909, R.C.M.1947. We review the action of the district court the same as in other proceedings. Section 93-8907, R.C.M.1947. Our duty in reviewing findings of fact in a civil action tried by the district court without a jury is confined to determining whether there is substantial credible evidence to support the district court's findings of fact. Peery v. Higgins, 152 Mont. 140, 447 P.2d 481; Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48; Finley v. Rutherford, 151 Mont. 488, 444 P.2d 306; Eliason v. Eliason, 151 Mont. 409, 443 P.2d 884; White v. Nollmeyer, 151 Mont. 387, 443 P.2d 873; Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Kyser v. Hiebert, 142 Mont. 466, 385 P.2d 90. We will not disturb the district court's findings of fact unless there is a clear preponderance of evidence against

such findings. Perry v. Higgins, supra; Spencer v. Robertson, supra; Finley v. Rutherford, supra; Eliason v. Eliason, supra; Studer Const. Co. v. Rural Special Impr. Dist., 148 Mont. 200, 418 P.2d 865; Duffie v. Metro. San. & Storm Dist., 147 Mont. 541, 417 P.2d 227; Kosel v. Stone, 146 Mont. 218, 404 P.2d 894; Larsen Farms v. City of Plentywood, 145 Mont. 509, 402 P.2d 410. Although the State has not excepted to the findings of fact nor moved to amend or modify them, we do not rest on this technical group but proceed to review the evidence on the merits.

Initially, we observe the undisputed evidence that substantial portions of the Interstate highway, the Vaughn highway, and the Sixth Street Southwest highway within the District are below the elevation that would be attained by flood waters of the design flood. It is equally clear that this would subject these highways to the action of design flood waters flowing against, upon and over these highways and their appurtences. James F. Kelly, Chief of the Levee Design Section of the United States Army Corps of Engineers and a graduate engineer of 18 years experience with the Corps, testified that over-topping of the highway by flood waters can cause scouring and severe erosion on the down stream side of the highway embankment. William Wenzel, and John R. Kelly, both engineers for the District, and Ben Briscoe, the Great Falls district engineer for the State Highway Department, all testified that if water saturated the substructure of a highway, it would cause instability and various accompanying deleterious effects. Also, the erosion of bridge approaches and other washouts could occur under the design flood. John R. Kelly testified that flooding would cause deposits of silt at certain places on the highway system. The testimony of John R. Kelly and Donald Gruel, a hydraulic engineer for the Montana Highway Commission, indicated that another flood of the magnitude of the design flood, would inundate the surface of part of the highway system within the Flood District. Walter M. Linder, a hydraulic engineer for the United States Army

Corps of Engineers, gave expert opinion testimony that the building of the proposed levee system as designed by the Corps of Engineers would prevent future repairs to the various state highways in the Flood District and substantially reduce their maintenance costs. All but one of the State Highway Commission's witnesses admitted that the levee project would prevent damages to the highways, their appurtenant facilities, bridges, and approaches, to some degree.

Briscoe testified that the riprap protecting the approaches to the Sun River bridge would not protect these approaches from all the water of the design flood. It is undisputed that cleanup operations would be necessary where flood waters topped sections of the highways within the District: Dead animals, uprooted trees, other flotsam and jetsam, silt, and damage to fences or cleaning the debris therefrom would have to be done.

In summary, there is an abundance of credible testimony that maintenance and repair costs of existing highways in the District would be substantially reduced by the proposed flood control project and various costs of preventive maintenance by the Highway Department itself would be eliminated. The testimony is not without conflict to be sure; nonetheless there is substantial credible evidence supporting the findings of the district court. Accordingly, we will not disturb these findings on appeal.

These factual findings demonstrate the existence of a substantial relationship between the proposed flood control project of the district for which the assessment is being made and the costs of construction, reconstruction, maintenance and repair of public highways, roads and bridges for which state highway trust funds, derived principally from motor vehicle license fees and gasoline taxes, may be expended under the anti-diversion amendment to the State Constitution, Article XII, Sec. 1b. In our view this is the test which the assessment must satisfy to escape the prohibition on expenditures of highway funds under the anti-diversion amendment.

It seems clear to us that under the facts of this case, the

State Highway Commission could expend State highway trust funds directly to pay the costs of the flood control facilities involved here. Are these facilities any less "costs of construction reconstruction, maintenance and repair" because they will be provided by the District and the State Highway Commission assessed for its proportionate share of the costs? Of course not! The nature of improvements themselves, not the method adopted to accomplish them, determines their character within the meaning of the definitions contained in the anti-diversion amendment. No frittering away of highway funds under the guise of interpretation beyond the plain meaning of the anti-diversion amendment is involved. Expenditure of highway funds for prevention of future maintenance and repairs to state highways being authorized directly, is not prohibited indirectly through the medium of local flood control district assessment.

Whether or not federal highway matching funds are available or unavailable is not controlling under the anti-diversion amendment. No such consideration is mentioned directly or by implication therein. The sole criteria governing the expenditure of the designated highway funds therein is whether such expenditure constitutes "cost of construction, reconstruction, maintenance and repair of public highways, roads, streets and bridges". If it does, the expenditure of these highway funds is permitted without violation of the constitutional proscription; otherwise not. As we have heretofore held the former to be the case here this argument of the State Highway Commission is without merit.

The same rationale applies to the contentions of the State that public funds raised, acquired and appropriated for highway purposes cannot legally be expended otherwise and that the history of legislation restricting the disposition of highway funds to highway purposes reflects progressive implementation of restrictions. Both of these contentions are bottomed on the proposition that State highway trust funds cannot be diverted to nonhighway purposes. From what has been said heretofore, this is not

the situation in the instant case. Here, the funds are being spent for highway purposes within the meaning of the controlling constitutional provision. These contentions simply do not square with the facts of the instant case.

It is to be noted that the amount of the assessment against the State Highway Commission and related questions are outside the scope of the issues in the instant case, being reserved for later determination in subsequent proceedings. We observe in passing that the State Highway Commission has the same rights as any other property owner in the District in subsequent assessment proceedings.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES and JOHN C. HARRISON, concur.