MOUNTAIN CONSTRUCTION, Inc., PLAINTIFF AND RESPOND-
ENT, *v.* CRICK CO, A CORPORATION, ET AL., DEFENDANTS AND
APPELLANTS.

No. 12065.
Submitted Dec. 3, 1971.
Decided Dec. 20, 1971.
Rehearing Denied Jan. 7, 1972.
491 P.2d 1224.

Gough, Booth, Shanahan & Johnson, Helena, Ward A. Shanahan argued, Helena, Mulroney, Delaney & Dalby, Missoula, for appellants.

Boone, Karlberg & Haddon, Missoula, Sam E. Haddon argued, Missoula, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law by the district court of the fourth judicial district, Judge Brownlee presiding. Two of the three defendants appeal. The third defendant, Missoula Paving Company did not appeal.

Defendant Crick Co. entered in a contract in 1965 with the Bureau of Public Roads to construct certain road improvements in Glacier Park. Defendant Missoula Paving Company was a subcontractor for Crick Co. on a portion of the project. The defendant United Pacific Insurance Company was surety on a bond for Missoula Paving Company issued to Crick Co., as obligee. This bond covered the performance of Missoula Paving's subcontract with Crick Co.

Plaintiff Mountain Construction, Inc. entered into an oral contract with Missoula Paving Company to crush and stockpile certain Items of road aggregate, which Missoula Paving was obligated to furnish under its contract with Crick Co. The Items involved here are four in number:

(1) 200—crushed aggregate,
(2) 305—stockpile aggregate,
(3) 310—blotter material, (all measured in cubic yards);
(4) 317—plant mixture aggregate (measured in tons).

Although there is conflicting evidence, the trial court found the Unit prices in the oral contract between plaintiff and Missoula Paving to be $1.30, $1.30, $3.50 per yard and $1.50 per ton, as to each consecutively.

In the early summer of 1965, Mountain Construction under-

took the crushing and stockpiling at two separate and distinct pit sites. The second Item, stockpile aggregate, was produced at the "Lundgren" pit. The other three items were produced and stockpiled at the "McDonald" pit. By the end of October, the following quantities had been crushed and stockpiled at the McDonald pit:

Item 1......................................................................18,430 cubic yards

Item 2....................................................................... 900 cubic yards

Item 3....................................................................... 6,000 tons.

Of these Items, an estimated amount of Item 1, 14,000 yards, was largely used on the job in 1965; leaving an estimated 4,430 yards stockpiled. Also, at that time, the end of the 1965 season, there were 900 yards of Item 3, blotter material, and 6,000 tons of Item 4, plant mix aggregate, remaining in stockpile. All of those remaining stockpiled materials were at the McDonald pit.

Previously, in 1965, in addition to the 14,000 yards of Item 1 placed, all of Item 2, the stockpile aggregate produced at the Lundgren pit, was "placed" in the sense that it was delivered to the Park Service maintenance stockpile at Apgar.

The system of payment between the various parties was generally by estimates of the amounts actually used and placed, rather than the amounts produced. As the work progressed, the Bureau of Public Roads would pay Crick Co. on estimates, less 10% retainage; Crick Co. would in turn pay Missoula Paving, less 10% retainage; Missoula Paving would in turn pay Mountain Construction, less 10%. In September 1965, Missoula Paving paid Mountain Construction $12,085.57. Thereafter, subsequent to the seasonal shutdown in October, Mountain Construction received an additional $17,795.03 in the form of checks from the United Pacific Insurance Company either directly to Mountain Construction or to its creditors. At this stage then, based on estimates for materials "placed", Mountain Construction had earned $33,132.00, had been paid $29,880.60, leaving $3,313.22 in retainages owing. (The mathematical difference in figures is represented by a gasoline item).

Previously we referred to the unit prices. One of the Items above, Item 3—blotter material, was in stockpile, had not been used or "placed", but had been partially paid for at the rate of $1.50 per yard leaving a balance due, when and if placed, of $2.00 per yard.

Sometime in the fall of 1965, United Pacific became suspicious of the financial standing of Missoula Paving. United Pacific had considerable interest, since it had bonded Crick Co. to the United States government, bonded Missoula Paving to Crick Co., and bonded Missoula Paving to another contract or contracts. United Pacific "moved in" on Missoula Paving and "took over". It took an assignment from Missoula Paving of funds due and proceeded to pay creditors, including Mountain Construction. The last item above, $17,795.03, was paid by United Pacific either directly to Mountain Construction or to its creditors.

As to the project in the instant case, United Pacific was active through the winter months of 1965-66. In March 1966, Missoula Paving notified Crick Co. that it would default. United Pacific then, under the terms of its bond, elected to complete the contract of Missoula Paving with Crick Co. by separately engaging another contractor, Kiely Construction Company, to complete Missoula Paving's contract.

During the winter months, and in February 1966, United Pacific was endeavoring to collect all accounts of Missoula Paving and to pay all creditors; among them was Mountain Construction. Upon payment of the amount of $4,029.19, included in the figure $17,795.03 above, United Pacific took a release and assignment from Mountain Construction. This item of $4,029.19 was to cover an estimate of progress to November 20, 1965.

At this point the position of the parties separate, giving rise to this action. It is clear that the payment to date of November 20, 1965, did not include the $3,310.00 retainage nor did it include the stockpile items not "placed", other than a partial payment of stockpiled blotter material, heretofore referred to.

United Pacific took and takes the position that the release referred to was a release of all claims of Mountain Construction. Thereafter United Pacific assumed to "own" the stockpiled material and by contract *gave* it to Kiely Construction to complete the contract.

On the other hand, Mountain Construction claims to have only released its claims to date, that is, as to what it had earned to date; and, what was stockpiled if used and finally "placed", to be paid for at that time. The trial court found, and it had evidence to so do, that the release was only "to date" as urged by Mountain Construction.

Subsequently Kiely Construction, for and on behalf of United Pacific, completed the contract and used and "placed" certain of the materials stockpiled by Mountain Construction and "given" to it by United Pacific. It is for this material, plus the retainage, that Mountain Construction has judgment.

The problem confronting the trial court was, among other things, the material used, how much was "placed" and did it meet specifications. In order to prove the facts solving the problem, both sides relied on reports of the Bureau of Public Roads. Mountain Construction contended that it actually produced more than was finally "placed", but it had to content itself with the Bureau records.

As to the Bureau records produced, something is to be desired. Described by defendants' counsel as a "phantom" witness was one M. C. Ackers, the Bureau project engineer. He was never called as a witness, although the district judge gave defendants the opportunity to so do. Certain of Ackers' reports were stipulated into the record. Defendants rely on defendants' Exhibit #1 signed by Ackers, which is a reflection of the basis upon which Crick Co. was paid by the government. This exhibit shows amounts of material for Items 1, 2, 3 and 4, heretofore discussed. The exhibit could be interpreted to show less amounts attributable to Missoula Paving, and through it to Mountain Construction, than are claimed. On the other hand, it also shows

amounts of the same Items attributable to Kiely Construction which may or may not be part of the same Items. Ackers was not called as a witness to interpret the exhibit.

The same Ackers, in response to requests by plaintiff Mountain Construction, later that same year furnished records from the fall of 1966, to show the amounts of the Items produced, either measured or estimated. These are the figures the district court accepted. Defendants argue they should not be accepted since they tend to disagree with defendants' Exhibit #1. Again, if a discrepancy appears, depending upon the interpretation of the data, Ackers was not called to explain, although the district court offered the opportunity. At best, this amounts only to a conflict in the evidence and the trier of fact determined it.

We have set forth the facts, the evidence, and as the district court viewed it, before setting forth the issues since the facts explain the issues and tend to determine them.

The issues are:

(1) Are the findings of the trial court supported by substantial credible evidence?

(2) Did the district court have jurisdiction to hear and try the plaintiff's claim to recover for materials furnished and used on the project and for which payment was not made?

As to the first issue, in our recitation of the facts it is clear that, although the evidence was conflicting, the findings of the district court are supported by substantial evidence. This will not be disturbed on appeal. State Highway Commission v. West Great Falls Flood Control Drainage District, 155 Mont. 157, 171-172, 468 P.2d 753.

Contained in the first issue, as argued by appellants, are two separate items. One, the amount of $3,313.22, the retainage; the other, the amount of $4,912.00 for Items "placed" from the stockpiled materials produced by Mountain Construction. We find as discussed heretofore, both items were due and owing. United Pacific was, in fact, acting in the shoes of Missoula Paving. The evidence is clear on this point.

As to the second issue, appellants' contention is that Mountain Construction had but one remedy—that being under the Miller Act, 40 U.S.C. § 270a et seq.; not having chosen to pursue that remedy—it is foreclosed from pursuing this action. United Pacific here would claim Miller Act immunity.

In this connection, appellants here, United Pacific and Crick Co., take the position that no direct contract existed between them and Mountain Construction. Missoula Paving was a defendant below but did not appeal. As pointed out, United Pacific "took over" and "stepped in the shoes" of Missoula Paving in completing the contract. It was not at that stage a separate and independent party from Missoula Paving. No attempt was made to separate United Pacific and Crick Co.'s positions. Accordingly, we fail to see where the application of the Miller Act as an exclusive remedy would have any bearing on this case.

Having examined the entire record, we find the district court was supported in the evidence and that its rulings were correct.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY and HASWELL concur.