No. 12264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

MELVYN HANLON,

Plaintiff and Respondent,

-vs-

L. P. ANDERSON,

Defendant and Appellant.

---

Appeal from:  District Court of the Sixteenth Judicial District.
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Lucas, Jardine and Monaghan, Miles City, Montana.
Thomas M. Monaghan argued, Miles City, Montana.

For Respondent:

Ask and Pratt, Roundup, Montana.
John L. Pratt argued, Roundup, Montana.

---

Submitted:  September 22, 1972

Decided: OCT 1 8 1972

Filed: OCT 1 8 1972

*Thomas J. Kearney*
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered upon findings of fact and conclusions of law after trial by the court without a jury in the sixteenth judicial district, county of Custer.

Plaintiff brought this action against defendant for equipment sold and delivered to defendant on August 25, 1963. The amount of the judgment was $1,700.

The ultimate issue here is whether there is substantial credible evidence to support the rulings of the district court and its findings and conclusions. The three separate issues are set out later, but we approach the issues with an attempt at setting forth the rather confusing and unusual circumstances.

Plaintiff is one Melvyn Hanlon. Plaintiff did not appear at the trial. William Hanlon, father of plaintiff, appeared and supplied all the testimony on behalf of the plaintiff concerning the sale of the equipment.

William Hanlon had been in the oil business most of his life and operated as the Hanlon Drilling Co. In 1963 he was also the manager of Petro Fuel Refining Company. During that period, Hanlon, father of plaintiff, purchased tires from the L.P. Anderson Tire Co.Inc.,.a Montana corporation, of which L. P. Anderson, defendant herein, is president. The tires were billed to Hanlon Drilling Co., a business name of William Hanlon. The same William Hanlon was general manager, but not owner, of Petro Fuel Refining Company. The same William Hanlon directed the tire company to bill Petro Fuel for the tires, which was done. Finally the tire account grew to an amount of approximately $3,000.

At about this same time, one Contractor's Service, Inc. purchased some real property near Billings. This real property had been the "yard site" of Hanlon Drilling Co. and owned by William Hanlon. Somehow, unexplained in the record, the Hanlon

- 2 -

real property was purchased by Contractor's Service, Inc., which corporation had L. P. Anderson, the personal defendant here, as its president.

At about the same time the tire company, through its vice-president and manager, was pressing the Hanlon Drilling Co. through William Hanlon for payment of the tire bill. William Hanlon suggested that he had some equipment L. P. Anderson might be interested in buying and, according to one witness, a meeting between William Hanlon and L. P. Anderson was arranged. According to this same witness, the meeting was arranged at Hanlon's request in response to the press for payment for the tires by L. P. Anderson Tire Co.

The "yard site" was where William Hanlon had numerous pieces of equipment stored. This site was now owned by Contractor's Service Inc., but William Hanlon continued to store his equipment there. At this point William Hanlon met with L. P. Anderson to discuss the possible sale of some of Hanlon's equipment and, according to L. P. Anderson, to discuss the tire bill of Petro Fuel Refining Company with L.P.Anderson Tire Co.

Anderson agreed to accept several items of equipment from Hanlon. Anderson's version is that he was acting as president of the tire company and agreed to offset the account of Petro Fuel Refining Company with the tire company. Hanlon's version is that it was a personal sale to L. P. Anderson on behalf of his son Melvyn Hanlon, plaintiff here.

William Hanlon, on August 25, 1963 billed as follows:

"Drilling Contractor                              Billings,Montana
                                                 August 25, 1963
        "Sold to
        "L.P. Anderson
        "Miles City, Montana

                    "In Account with
              "HANLON DRILLING CO.
              "120 North 30th Street
              "Box 1724
              "Billings, Montana

```
"1 - Hydraulic Puller, Complete        $250.00
"1 - 7 1/4 x 18 Oil Well Mud Pump       450.00
"1 - Lathe                              600.00
"1 - Free Roll 'For Truck'               50.00
     "Gas Tanks and Pump                350.00
                          "Total      $1700.00"
```

About a year and one half later, on January 5, 1965, another billing was made:

```
"Drilling Contractor                    Billings, Montana
                                        January 5, 1965
     "L.P. Anderson
     "Miles City, Montana

                        "In account with
                        "HANLON DRILLING CO.
                          "120 North 30th Street
                          "Box 1724
                          "Billings, Montana
     "Due: Melvyn L. Hanlon

          "8/25/63-  One Hydraulic Puller Complete    $250.00
                     "One 7 1/4 x 18 Oilwell Pump      450.00
                     "One Shop Lathe                   600.00
                     "One Free Roll for Truckbed        50.00
                     "Yard Underground Gas Pumps & Tanks 350.00

                     "TOTAL DUE MELVYN L. HANLON      $1,700.00"
```

Here, for the first time, the name of the plaintiff, Melvyn Hanlon, appears. William Hanlon had never informed anyone of Melvyn's status. L.P. Anderson had never met nor dealt with Melvyn.

In October 1966, this action was filed in Yellowstone County. The venue was changed to Custer County. Plaintiff through his then attorney of record was informed by Mr. Anderson's attorney that the action should be against L.P. Anderson Tire Co., rather than Anderson personally. In December 1966, then counsel for plaintiff asked defendant's counsel to stipulate that the tire company could be substituted as a defendant. Defendant's counsel in a letter dated January 2, 1967, did so stipulate. However, plaintiff never did amend the complaint to include the corporate defendant.

The matter lay dormant from 1967 until 1971. On March 6, 1971, William Hanlon wrote the following letter:

"Mr. Sam Ohnstad
"Secretary & Treasurer of L.P. Anderson Companies
"Box 190
"Miles City Montana   59301

"Dear Mr. Ohnstad:

"In reply to yours of January 15, 1971, I wish to remind you, that this Lathe was included along with other Equipment, which I sold to L.P. Anderson for the sum of $ 1750.00, which amount is still due me and must be paid to me.  Which means that I claim no rights in the Lathe and so far as I am concerned, you own it and can do as you wish it.

"In the past several years and when the Lathe was inside and out of the Weather, I was approched several times, by persons interested in purchasing same and in each instant, I informed them that, it belonged to L.P. ANDERSON.  At this time I am sure that it could have been sold for several times the amount you are now, being offered.

"Surely you must be acquainted with fact that the other Equipment which I sold to Anderson has been sold by you and apparently there was no doubt on your part asto ownership, which is correct, since you had purchased same from me and still owe for same.  Now, how come all at once I have an interest, in the only piece of Equipment left on the premises.

"I do owe L.P.Anderson Tire Company the sum of $150.00 which, I plan to pay just as soon as I receive payment of the $ 1750.00 due me.

"I have been infomed that you are trying to charge me with the account of Petro Fuel Refining Company, a Corporation, who employed me as their General Manager, this account I understand is around $1500.00   You surely remember that on occasions previously, Petro had paid their account with the tire Company, by exchanging Diesel Fuel as payment and you surely must remember that Petro tried to get you to take Diesel and clean up the account, on several occasions.

"I stopped to see L.P. in regard to paying me for the Equipment, at which time, he told you in my presence to issue me a check.  You in turn, said you could not do it at this time and that I could expect it later.  At this same time I mentioned that Petro would like to pay up their account, by delivering some of their Diesel in an amount sufficent to clean up their account, this was nothing new as it had been handled this way before.

"At no time did I ever agree or intimate, that I was responsible for any Petro purchases and I am sure that at that time, you preferred Petro's credit to Hanlon's.

"I agree with you that this should be straightened out and can be, by just paying me for the Equipment ($1750).

S/ "William Hanlon"

Subsequently trial was had on December 14, 1971, without a jury.  The court made the following findings of fact and conclusions of law:

- 5 -

## "FINDINGS OF FACT

### "I

"That on or about the 25th day of August, 1963, Plaintiff was the owner of the following described property:

"1 Hydraulic Puller, complete
"1 7 1/4 x 18 Oil Well Pump
"1 Shop Lathe
"1 Free Roll 'For Truck' Bed
    "Underground gas tanks and pumps

### "II

"That on or about the 25th day of August, 1963, William Hanlon, the Plaintiff's father, acting on behalf of the Plaintiff, entered into an agreement with L. P. Anderson, the Defendant, whereby the Defendant agreed to pay $1,700.00 for the above described property.

### "III

"That possession and ownership of the above described property passed to the Defendant at the time of the sale.

### "IV

"That on or about the 25th day of August, 1963, some of the above described property was removed from its location at the time of the sale.

### "V

"That after August 25, 1963, Plaintiff never again enjoyed the use or possession of the above described property.

### "VI

"That Defendant was billed for the above described property on August 25, 1963, and again in 1965. The bill which was sent to the Defendant in 1965 clearly indicated that the sale price for the property was owed to Melvyn Hanlon, the Plaintiff herein.

### "VII

"That Defendant retained each statement which was sent to him and failed to object to the correctness of the statements or to the existence of the debt prior to the filing of this action in October of 1966.

### "VIII

"That Defendant ignored all requests for payment and failed to make any payments on said account.

- 6 -

## "CONCLUSIONS OF LAW

"WHEREFORE on the basis of the foregoing Findings of Fact, the Court concludes as a matter of law as follows:

"1. That the Defendant herein entered into a contract with William Hanlon, who was acting for and on behalf of the Plaintiff whereby the Defendant agreed to purchase one hydraulic puller, complete, one 7 1/4 x 18 oil well pump, one shop lathe, one free roll for truck bed, and underground gas tanks and pumps, for a total price of $1,700.00.

"2. That the Defendant was furnished with the above described property and was periodically billed for the sales price of $1,700.00.

"3. That Defendant's retention without objection to the above mentioned statements created an account stated whereby Defendant owes Plaintiff the sum of $1,700.00.

"4. That there is now due and owing the Plaintiff by the Defendant the sum of $1,700.00, said sum being the sales price, plus interest thereon at the rate of six percent (6%) per annum together with Plaintiff's costs and disbursements of suit."

The issues on appeal are:

1. Whether the district court erred in not dismissing the action because the plaintiff was not the real party in interest and further erred in finding that plaintiff was the owner of the equipment in question on August 25, 1963.

2. Whether the district court erred in finding that the transaction between William Hanlon and L. P. Anderson was one in which L. P. Anderson was dealing in his individual capacity.

3. Whether the district court erred in finding that an account stated existed between the plaintiff and defendant.

Heretofore we have attempted to set out the facts giving rise to this case. We say attempted, because the trial was so incomplete and the testimony of William Hanlon so inconsistent, within itself, that to relate the facts accurately is not possible.

- 7 -

We have also set out several exhibits showing the Hanlon Drilling Co. as the owner of the equipment in question on the date of the sale. Yet Melvyn, who had nothing to do with Hanlon Drilling Co, who had never dealt with Anderson, who had never been revealed by his father, who did not appear at the trial, who had no documentary basis for any claim other than the billing of January 5, 1965, appears with an account stated, according to the conclusions of law. William Hanlon's letter of March 6, 1971, claims ownership of the equipment in William at all times. The amount is different, $1750 as against $1700 when Hanlon Drilling Co. billed Anderson in August 1963.

In his testimony William Hanlon claimed that his son Melvyn owned the equipment in August 1963 by virtue of some kind of a gift from William to Melvyn, sometime prior. William Hanlon did not produce any documentary evidence of any transfers between himself and Melvyn. As he explained at one point, "* * * The son and I are father and son and we don't have to go into a lot of paperwork to protect one another." Subsequent to the sale of the equipment, he claimed his son gave him, the father, the right to collect the amount. This oral testimony is flatly disputed by the documents, including the letter heretofore set forth dated March 6, 1971.

At one point in the testimony, after the introduction of the two billings as exhibits, William Hanlon had this to say:

"Q. Did you ever receive any response from L.P. Anderson in regard to these statements that you sent to him?

"A. I stopped here in Miles City at his Yard, and I waited while he was busy with some of his employees, and as soon as he was free, I asked him if I could get a check for this equipment. He said, 'Let's go over to the office.' and as I remember, he put his hand on my shoulder, or on my arm, and we went over to the office, and he told his bookkeeper to make Hanlon out a check for that account. The bookkeeper said, 'We don't ---we can't do it now.' So when I walked out, L.P. said it would probably ---said he would probably give/a check in a couple weeks."

The relationship of this testimony to the letter of March 6, 1971, shows that William Hanlon dealt at all times as the owner of the equipment. Clearly, from all of the credible testimony, substantiated in any way, William Hanlon was the real party in interest. This was challenged by motion promptly and at all times. No showing of compliance with section 29-208, R.C.M. 1947, was attempted or made. The court's finding of fact No. 2 is not borne out by the record, and its conclusion of law No. 1 is incorrect. William Hanlon's testimony was inconsistent at every stage. Even if his testimony in regards to some sort of a gift by him to his son prior to the sale was believed, at the time the suit was filed he testified that his son had given him the account so that in any event his son Melvyn was not the real party in interest. M.R.Civ. P., Rule 17(a).

The second issue will not be discussed, but in passing we do observe that the testimony was conflicting. This second issue is not important to the resolution of the case, because if Melvyn is not the proper party it makes no difference.

The third issue as to an account stated will be discussed within the context of the exhibits and testimony previously set forth. While William Hanon testified that he met with L.P.Anderson, Melvyn never did meet, correspond, or in any way enter into a new agreement with L.P. Anderson. The only connection to Melvyn was plaintiff's billing of January 5, 1965, heretofore set out. This invoice was on William Hanlon's letterhead, disputed by William Hanlon's own letter of later date; and does not amount to the substantial credible evidence required by law.

In Nelson v. Montana Iron Mining Company, 140 Mont. 331,334, 371 P.2d 874, the law in Montana has been explained concerning the nature of an account stated:

> "'An account stated is a new contract arising out
> of an account existing between the parties - an agree-
> ment that the items of the account and the balance

struck are correct, with an agreement express or implied for the payment of such balance. The consideration for the new contract is the original account (Martin v. Heinze, 31 Mont. 68, 77 P. 427,) or speaking with greater exactness, the consideration is the settlement of the original account (Johnson v. Gallatin Valley Milling Co., 38 Mont. 83, 98 P. 883)'

"The latest case involving an account stated was Holmes v. Potts, 132 Mont. 477, 487, 319 P.2d 232, 237, where this court said:

"'To state an account is to supplant an old obligation with a new. There must be mutual agreement based on mutual understanding, for without understanding there can be no agreement. * * * There can be no accounting together so long as either party fails to undertake. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." R.C.M. 1947, Section 13-316. "There must be the meeting of two separate and independent minds * * *." Gordon Campbell Petroleum Co. v. Gordon Campbell-Kevin Syndicate, supra, 75 Mont. at page 269, 242 P. at page 541. "To establish an account stated there must be a contract between the parties, that is, an express or implied promise by the debtor to the creditor." 6 Williston, Contracts (Rev.Ed.) § 1862, P. 5227, citing Hough v. Rocky Mountain Fire Ins. Co., 70 Mont. 244, 224 P. 858.

"'"An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance. If the acknowledgment or admission is qualified, and not absolute * * * there is no account stated." 1 Am.Jur., Accounts and Accounting, § 23, P. 277.

"'" * * * A partial settlement of the accounts without arriving at any balance is not sufficient to constitute an account stated." 1 C.J.S. Account Stated, §§ 25 and 26, pp. 704,705.'

"It is apparent that the single indispensable ingredient in an account stated is an exact, certain and definite balance arrived at by the debtor and creditor. This can best be illustrated by the case where there is an 'express agreement' between the debtor and creditor. In that case the law contemplates that there may be haggling back and forth, but that eventually a balance may be struck which is agreeable to both parties. When the balance is agreed upon there is a new contract into which all prior negotiations are merged. If a balance could not be agreed upon there would not be an account stated, and any cause of action would have to be brought on the original accounts."

The facts here simply do not lend themselves to the rules of law which have been established concerning an account stated. The initial dealing was between William Hanlon and L. P. Anderson.

Hanlon's first billing dated August 25, 1963, indicates that the account is with Hanlon Drilling Co., which is solely owned by William Hanlon. The second billing dated January 5, 1965, one and one-half years later, indicates to some extent that the account is with Melvyn L. Hanlon. Finally, William Hanlon's letter of March 6, 1971, indicates the account is solely with William Hanlon and it states the amount due as being $1,750, not the amount stated in the complaint of $1,700.

There being no substantial credible evidence appearing, the findings and conclusions that an account stated was reached is in error.

Both briefs argue as to the equities involved. We are not impressed. We have examined the record and find the findings of fact and conclusions of law are not supported by the record, and order the cause remanded to the district court for an order dismissing the complaint.

It is so ordered.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices.

Mr. Justice Haswell and Mr. Justice Daly dissenting:

The function of this Court in reviewing findings of fact in an action tried by the district court without a jury is confined to determining whether there is substantial credible evidence supporting such findings of fact. Section 93-216, R.C.M. 1947; State Highway Commission v. The West Great Falls Flood Control and Drainage District, 155 Mont. 157, 468 P.2d 753 and cases cited therein; Timmerman v. Gabriel, 155 Mont. 294, 470 P. 2d 528; Hornung v. Estate of Lagerquist, 155 Mont. 412, 473 P.2d 541. Although the majority opinion gives lip service to this principle, in our opinion its conclusion that there is no substantial credible evidence supporting the findings (1) that the account was owed to the plaintiff Melvyn Hanlon, and (2) that there was an account stated, is at variance with the record at the trial.

In our view, the following substantial credible evidence supports the district court's finding that the account was owed to plaintiff Melvyn Hanlon, the real party in interest: (1) William Hanlon's testimony that plaintiff Melvyn Hanlon owned the property at the time of sale, (2) plaintiff's exhibit No. 2 showing an itemized billing to defendant of the property sold showing a total sum of $1700 owed to plaintiff Melvyn Hanlon, all without objection or dispute by defendant, (3) William Hanlon's testimony indicating that he was acting on behalf of plaintiff in attempting to collect the amount.

In our view, the foregoing evidence plus the evidence of William Hanlon concerning defendant's intention to pay which is quoted in the majority opinion establishes an account stated as found by the district court.

While it is true that the district court might have found otherwise depending on which of the witnesses it believed and which of the witnesses' testimony it determined to be more reliable, the district court is the trier of the facts and this Court is not, in our opinion.

Where, as here, the testimony of witnesses is conflicting, the credibility of the witnesses and the weight to be given their testimony is a matter for the trial court's determination. Eliason v. Eliason, 151 Mont. 409, 443 P.2d 884; Ballenger v. Tillman, 133 Mont. 369, 324 P.2d 1045; Notti v. Clark, 133 Mont. 263, 322 P.2d 112. This Court on appeal must abide by the trial court's determination of the credibility of the witnesses and the weight to be given their testimony. Eliason v. Eliason, supra; Hammond v. Knievel, 141 Mont. 433, 378 P.2d 388; Havre Irrigation Co. v. Majerus, 132 Mont. 410, 318 P.2d 1076. Conversely, it is not the function of this Court on appeal to make an independent determination of the credibility of the witnesses and the weight to be given their testimony; arrive at a contrary conclusion to that of the district court; and thus conclude that the trial court's findings lack substantiation, thereby reversing the district court's judgment and dismissing the case. This Court recently indicated the reasons underlying this principle in a unanimous opinion refusing to interfere with the trial court's determination of the credibility of the witnesses and the weight to be given their testimony in a nonjury case, Eliason v. Eliason, 151 Mont. 409, 416, 443 P.2d 884:

> "The trial court, having observed and considered the appearance of the witnesses upon the witness stand, their manner of testifying, their apparent candor or want of candor, in addition to the testimony itself, is in a better position than this Court to decide questions of credibility of witnesses and the weight to be given their testimony."

In our view, the majority here has made an independent determination of the credibility of plaintiff's principal witness,

- 13 -

William Hanlon, and the weight to be given his testimony; has concluded contrary to the district court that his credibility is lacking and no weight should be given his testimony; has set aside the findings of the district court accordingly; and has reversed the judgment and dismissed the case, leaving the defendant with $1700 worth of plaintiff's property which he has had for nine years and for which he has not paid one cent.

For these reasons, we dissent from the majority opinion herein and would affirm the judgment of the district court.

Associate Justices.